CLARK, C. J., dissenting.
This is an action to recover damages for personal injury.
The plaintiff, together with five others, composed a switching crew on the railroad yards of the defendant's lessee at Spencer, N.C. and on the first day of November, 1915, was switching cars and making up trains on the yard. About the hour of 12:15 o'clock p.m., the crew was working in the north end of the yard shifting cars and making up trains. From the north end of the yard they backed in on the straight lead track, which leads entirely through the yard and extends from Spencer to Salisbury. They coupled up to seven cars on the said straight lead and pulled these cars north on the ladder lead, which connects all the switch tracks in the north end of the yard. There are sixteen switch tracks connected with the ladder lead. The cars are switched by being taken out on the ladder lead and the switches set for the tracks upon which the cars are to be placed, and the cars are kicked in on these tracks wherever they are desired to be placed for the purpose of making up trains. *Page 549 
After the crew had pulled the cut of seven cars out on the lead they kicked one car down on the double track, which car plaintiff rode about 100 yards down the track. The engine and balance of crew then went out onto the ladder lead with the other cars for the purpose of placing these cars on other tracks. It was their purpose to put three cars of the seven attached to the engine into an orange train, which was a through freight train from Spencer, N.C. to the Potomac Yards, Va.
When plaintiff had set the brakes on the car which he rode down the double track, he dismounted from the car and saw the balance of the crew were cutting off three cars on the ladder lead for track No. 2 or 3. He got off the car he had stopped and walked down the main line of the railroad and crossed over to the track where the three cars were to be placed. He was about 60 feet from the cars — saw them coming down toward him; he walked toward the cars about three feet and attempted to cross the track at the switch for the purpose of getting on the cars on the other side. In attempting to cross the switch his foot (517) was caught between the guard rail and the stock rail and fastened, and before he could get it out the front truck of the first cars passed over his foot, cutting off part of his foot. When plaintiff saw that he could not get his foot out he laid down between the rails and the front truck passed over his foot. He crawled from under the car between the front and rear trucks.
Plaintiff says that he saw the cars coming toward him — saw the cars as they were cut loose when he was on top the car on double track; that there were three cars in the cut, the first car being a gondola car loaded with scrap iron, destined for Richmond, Va.; that the said cars were rolled about 15 miles per hour; that he knew there was no one on the cars to stop them; that it was his duty to stop the cars, which was done by applying the brakes when they had rolled to the place where he wanted them to go.
Plaintiff was an experienced brakeman; had been engaged in this work at this place for eleven years; was thoroughly familiar with this kind of work; he belonged to the crew that was doing the switching and making up the trains, and he was what was called "field-man"; that it was his duty to get on the cars and apply the brakes at the place he wanted to stop them; that he knew of the guard rail.
At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was refused, and the defendant excepted.
The defendant also requested the court to instruct the jury to answer the issue as to assumption of risk in favor of the defendant if they believed the evidence, which was refused, and the defendant excepted.
The jury returned a verdict in favor of the plaintiff, and judgment was rendered thereon, from which the defendant appealed. *Page 550 
Accepting the plaintiff's evidence as true, he was employed in interstate commerce at the time of his injury (see note to R. R. v.Behrens, 233 U.S. 473, 33 Anno. Cases 165; Saunders v. R. R.,167 N.C. 379; Rich v. R. R., 166 Mo. App. 379), and the action must therefore be disposed of under the Federal statute, which is exclusive and supersedes the right of action under the State law, and which unlike the statute in this State, recognizes the assumption of risk as a defense. Rennv. R. R., 170 N.C. 128, affirmed 241 U.S. 290.
The doctrine of assumption of risk, first recognized in the courts about 1837, when Priestly v. Fowler, 3 M. W., 1, was decided in England and Murray v. R. R., 1 McMullan (S.C.) 385, and (518) Farewell v. R. R., 4 Met. (Mass.), 49 in this country, is upon the idea that the employee knows and appreciates the dangers of his employment and assumes the risk of these dangers as a part of the contract of service, being paid for his risk in the increased wage, and also upon the ground of public policy, it being assumed that the employee will be more careful if he knows that he will not receive compensation for injuries received in the course of his employment.
Many of the courts, regarding the reasons upon which the doctrine is based as a fiction adopted to throw upon the employee all the hazards of the employment, have been reluctant to give it effect and have frequently taken hold upon seemingly immaterial matters to avoid its results. Consequently there is great diversity and conflict in judicial opinion as to the correct application of the doctrine, which we will not attempt to examine, as this action must be tried under the Federal law, and we are only concerned with what we conceive to be the doctrine of the Federal courts as announced by the Supreme Court of the United States. That Court enforces the rule that it is the duty of the employer to provide reasonably safe and adequate machinery and appliances for the use of the employer and to keep and maintain them in such condition, and that a failure to perform this duty is negligence. Gardner v. R. R., 150 U.S. 349. It also holds that the employee assumes the ordinary risks incident to his employment, and that if he continues to work without objection, having knowledge of a defect and an apprehension of danger, and is injured, that this is one of the ordinary risks of his employment. R. R. v. McDade, 135 U.S. 570.
In Butler v. Frazee, 211 U.S. 459, it is held that "One understanding in the condition of machinery and dangers arising therefrom, or who is capable of doing so, and voluntarily, in the course of *Page 551 
employment, exposes himself thereto assumed the risk thereof, and if injury results cannot recover against the employer."
In R.R. v. Shalstrom, 195 Fed., 729, it is said: "Although the risk of the master's negligence and of its effect unknown to the servant is not one of the ordinary risks of the employment which he assumes, yet if the negligence of the master or its effect is known and appreciated by the servant, or is obvious, or `so patent as to be readily observed by him by the reasonable use of his sense, having in view his age, intelligence, and experience,' and he enters and continues in the employment without objection, he elects to assume the risk of it, and he cannot recover for the damages it causes."
In R. R. v. Archbald, 170 U.S. 671, White, C. J., says: "The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employee has a right to rely upon this duty being performed: and that while in entering the employment he assumes (519) the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employee with respect to appliances furnished. An exception to this general rule is well established. Which holds that where an employee receives for use a defective appliance and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used."
Running through the cases is the principle that if the employee has knowledge of the conditions and the dangers, or if these are obvious, and he continues in the employment without objection, he is held to have assumed the risk, although he may be injured by reason of some neglect of the employer, and in its application it was held in Seley v. R. R.,152 U.S. 145, that a brakeman, familiar with a certain freight yard, whose foot was caught in an unblocked frog while making a coupling assumed the risk.
The Court, after referring to several decided cases, says: "The evidence showed that Seley had been in the employ of the defendant for several years as brakeman and as conductor of freight trains; that his duty brought him frequently into the yard in question to make up his trains; that he necessarily knew of the form of the frog there in use; and it is not shown that he ever complained to his employers of the character of frogs used by them. He must, therefore, be assumed to have entered and continued in the employ of the defendant with full knowledge of the dangers asserted to arise out of the use of unblocked frogs. *Page 552 
 "Appel v. R. R., 111 N.Y. 550, 19 N.E. 93, was a case where the plaintiff's intestate was a brakeman employed in coupling cars in the yards of the defendant at Buffaloes, N. Y., and while so engaged his foot was caught in an unblocked frog, and he was run over and killed; and the Court of Appeals held that `in accepting and continuing in the employment, the deceased assumed the hazard of all known obvious dangers, and that he was chargeable with notice of the difficulty in removing the foot when caught in the frog and of the danger to be apprehended therefrom, and therefore that a cause of action was not made out, and a refusal to nonsuit was error.'"
The facts in the case from New York and in the Seley case are more favorable to the employee than are the facts in the case before us, as in those cases there was evidence of a defect in the frog in which the foot of the employee was caught, while here there is neither allegation nor evidence that the guard rail which caught the foot of the plaintiff was defective.
(520) The plaintiff is a man of eleven years experience; he was familiar with the yards where he was working; he knew of the existence and location of the guard rail; that the cars had been kicked towards him; that they were coming at the rate of 15 miles an hour, and every condition which had any bearing upon his injury was obvious and known to him, and under the authorities cited we must hold that he assumed the risk of his injury.
The Seley case, with its approval of the case from New York, is also authority for the position that it is proper to enter a judgment of nonsuit when the evidence for the plaintiff makes out clearly the defense of assumption of risk.
His Honor was in error in refusing to enter the judgment of nonsuit upon the defendant's motion, and our decision upon this question makes it unnecessary to consider the other exceptions.
In Ware v. R. R., at this term, the plaintiff was not employed in interstate commerce, and the action was tried under the State statute, which does not recognize assumption of risk as a defense.
Reversed.