JOHN C. CATES v. CINCINNATI EXHIBITION COMPANY AND THE CITY OF DURHAM.

(Filed 1 February, 1939.)

**Games and Exhibitions § 3—Where patrons are given choice between screened and unscreened seats, patron of bleachers may not recover for injury resulting from foul ball.**

The evidence tended to show that plaintiff was a patron at a night baseball game, that he purchased a seat in the bleachers although there were available reserved seats protected by roof and wire at a higher price; that a foul ball was hit which went higher than the arc of the lights so that it could not be seen, and that the ball fell and hit plaintiff in the eye. *Held:* Defendants' motions to nonsuit were properly allowed, since there was no evidence that the lights were negligently constructed, and since the operators of a baseball park fully discharged their duty in providing adequate seats safeguarded by roof and wire from thrown or batted balls, leaving the patrons to their choice between such screened seats and those unscreened.

APPEAL by plaintiff from *Spears, J.,* at September Term, 1938, of DURHAM. Affirmed.

*Hedrick & Hall for plaintiff, appellant.*

*W. C. Purcell and Fuller, Reade, Umstead & Fuller for Cincinnati Exhibition Company, appellee.*

*Claude V. Jones for City of Durham, appellee.*

SCHENCK, J. This is an action to recover damages for personal injury alleged to have been negligently inflicted.

There was evidence tending to show that the City of Durham owned a baseball field known as El Toro Park, and that it leased said park to

the Cincinnati Exhibition Company for the purpose of having games of baseball played therein between the Durham Baseball Club, owned by the Exhibition Company, and other clubs of the Piedmont League, during the season of 1936; that on the night of September 6, the Durham Baseball Club was playing a game of baseball with another baseball club of the Piedmont League upon said El Toro Park; that the plaintiff bought a ticket to and attended said game, having taken a seat in the bleacher seats which were parallel to and in close proximity of third base; that while watching the game from said bleacher seats plaintiff was struck in the eye by a foul ball and was thereby injured.

All of the evidence tends to show that there was no roof over the bleacher seats and no wire in front thereof, but that the reserved seats immediately behind the home plate were covered by roof and protected in front by wire; that the price charged for the bleacher seats was 40 cents and for reserved seats 65 cents; that the plaintiff voluntarily chose the bleacher seats, notwithstanding there were vacant reserved seats that he could have had, had he elected to pay therefor; that the plaintiff was familiar with the game of baseball and knew that foul balls were frequently knocked in most any direction, including the vicinity of third base, and that the plaintiff had often attended baseball games in El Toro Park and was familiar with the seating arrangements thereof, and knew that he could have purchased reserved seats protected by a roof and wire if he elected so to do; that while plaintiff was seated on said bleacher seats a foul ball was knocked by the batter which went above the rays of the lights of the park and out of the sight of the plaintiff, and fell in the area of the bleacher seats, striking the plaintiff.

When the plaintiff had introduced his evidence and rested his case, the defendants and each of them moved to dismiss the action, which motion was allowed, and judgment as in case of nonsuit entered. C. S., 567. To the ruling of the court the plaintiff reserved exception, and appealed.

A determinative question is presented at the outset of this appeal, namely: Is the failure to place a roof over the bleacher seats, or a failure to erect wire in front thereof, or failure to furnish any other protection thereto from thrown or batted balls, when seats so protected are furnished elsewhere and are known to be available by the occupants of the bleacher seats, negligence on the part of those responsible for the operation and maintenance of a baseball field or park? We are constrained to answer in the negative.

"It has been frequently held that one who invites the public to places of amusement, such as theatres, shows, and exhibitions, must exercise a high degree of care for the safety of those invited. As to stairways, platforms, walks, and other structures, it may be said that the duty is

3—215

somewhat similar in degree and nature to that owing from a common carrier to its passengers. (Citing authority.) But this rule must be modified when applied to an exhibition or game which is necessarily accompanied with some risk to the spectators. Baseball is not free from danger to those witnessing the game. But the perils are not so imminent that due care on the part of the management requires all the spectators to be screened in. In fact, a large part of those who attend prefer to sit where no screen obscures the view. The defendant has a right to cater to their desires. We believe that as to all who, with full knowledge of the danger from thrown or batted balls, attend a baseball game the management cannot be held negligent when it provides a choice between a screened in and an open seat; the screen being reasonably sufficient as to extent and substance." *Wells v. Minneapolis Baseball & Athletic Association,* 122 Minn., 327, 142 N. W., 706.

In *Brisson v. Minneapolis Baseball & Athletic Association* (1932), 185 Minn., 507, 240 N. W., 903, the court held that the management was not obliged to furnish screened seats for all who might possibly apply for them, but was only obligated to screen the most dangerous part of the grandstand and for those who might reasonably be anticipated to desire protected seats, and that they need not provide such screened seats for unusually large crowds.

". . . we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls, for the use of patrons who desired such protection. Defendants fully performed that duty when they provided screened seats in the grandstand, and gave plaintiff the opportunity of occupying one of those seats." *Crane v. Kansas City Baseball & Exhibition Co.* (Mo.), 153 S. W., 1076.

Those operating baseball parks or grounds are held to have discharged their full duty to spectators in safeguarding them from the danger of being struck by thrown or batted balls by providing adequately screened seats for patrons who desire them, and leaving the patrons to their choice between such screened seats and those unscreened. *Quinn v. Recreation Park Assn. et al.* (Cal., 1935), 46 P. (2d), 144; *Grimes v. American League Baseball Co.* (Mo., 1935), 78 S. W. (2d), 520; *Lorino v. New Orleans Baseball Amusement Co.* (1931), 16 La. App., 95, 133 So., 408; *Blackhall v. Albany Baseball & Amusement Co.* (N. Y., 1936), 285 N. Y. S., 695; *Ingersoll v. Onondaga Hockey Club* (N. Y.), 281 N. Y. S., 505; *Kavafian v. Seattle Baseball Club Assn.* (Wash., 1919), 181 P., 679.

It is well to note that there is no evidence in the record of negligence in the construction of the lighting system. All of the evidence tends to show that the lights were at the top of poles 65 or 70 feet above the

ground, and that the entire playing area of the field was lighted to that elevation. There is no evidence that such elevation was too low, or that the lights should have been higher, or that the elevation of the lights failed to correspond to that of the lights in general and customary use in similar parks. There is no evidence that the lights blinded the plaintiff, but only that a foul ball, outside of the playing area, went beyond the radius of the lights. The purpose of the lights was to light the playing area and there is no evidence that they failed to adequately fulfill this purpose.

Judgment below is

Affirmed.