CLIFF A. ERICKSON v. LEXINGTON BASEBALL CLUB, INC.

(Filed 23 May, 1951.)

1. **Games and Exhibitions § 3—**

  The management of a baseball park is not guilty of negligence in failing to provide a patron with a choice between screened and unscreened seats at a game attended by an unusually large number of spectators.

2. **Same—**

  The management of a baseball park is not an insurer of the safety of its patrons, but is required to exercise care commensurate with the circumstances to protect them from injury, and to this end is required to provide screening for seats in areas back of home plate where the danger is greatest, and to provide such screened seats in sufficient number to accommodate as many patrons as reasonably may be expected to call for them on ordinary occasions.

3. **Same—**

  After obtaining a seat in the bleachers, plaintiff's view of home plate became increasingly obscured intermittently by later arrivals of an unusually large crowd, some of whom were standing between the bleachers and the fence, and a few on the other side of the fence. Plaintiff was struck by a foul ball which he contended he was prevented from seeing in time, or from dodging, by reason of the crowding and disposition of the spectators, contending the management was negligent in thus subjecting him to extra hazards. *Held:* Plaintiff was cognizant of his danger, and by failing to move to a place of greater safety, assumed the risk and was guilty of contributory negligence barring recovery.

4. **Negligence § 19c—**

  Nonsuit on the ground of contributory negligence is proper when this conclusion is the sole reasonable inference deducible from the evidence.

APPEAL by plaintiff from *Clement, J.,* at September Civil Term, 1950, of DAVIDSON. Affirmed.

Civil action to recover damages for personal injury sustained by plaintiff when hit by a foul ball while attending a league baseball game. The plaintiff, after purchasing his ticket, first went to the grandstand, which was screened. All seats there being occupied, he was directed by a policeman to the right field bleachers where he took a seat behind first base. The bleacher seats were unscreened.

From judgment of nonsuit entered at the close of plaintiff's evidence, he appeals, assigning errors.

*Hubert E. Olive and S. A. DeLapp for plaintiff, appellant.*
*Phillips & Bower for defendant, appellee.*

JOHNSON, J. The plaintiff insists that his case should have been submitted to the jury on the theory that the defendant was negligent in not providing him with a choice between screened and unscreened seats. We are inclined to the other view.

This was a post-season, play-off game. Interest was at a high pitch. An unusually large crowd was in attendance, the like of which one witness said had never been seen before in Lexington. The grandstand and bleachers ordinarily seated about twenty-five hundred people. That night more than four thousand came. Play-offs like this seldom occurred. There was one admission price to all,—no reserved seats. It was a case of "first come, first served." The plaintiff reached the park about ten minutes before game time. All of the screened seats were then occupied. He was familiar with the park, having previously attended about a dozen games there.

The defendant's failure to provide the plaintiff with a screened seat under the facts here developed does not support an issue of actionable negligence, and Judge Clement correctly so held.

This is not to say that the management of a baseball park is not required to exercise reasonable care for the safety of its patrons. Nevertheless, it is not an insurer of their safety. Reasonable care is all that is required,—that is, care commensurate with the circumstances of the situation,—in protecting patrons from injuries. Anno.: 142 A.L.R. 868 (p. 869).

And the duty to exercise reasonable care imposes no obligation to provide protective screening for all seats in the stands and bleachers. This is so in part for the reason that many patrons prefer to sit where their view is not obscured by screening. Nor is management required, in order to free itself from negligence, to provide protected seats for all who may possibly apply for them. It is enough to provide screened seats, in the areas back of home plate where the danger of sharp foul tips is greatest, in sufficient number to accommodate as many patrons as may reasonably be expected to call for them on ordinary occasions. Protected seats for an unusual crowd, such as was in attendance at the game here involved, need not be provided. *Brisson v. Minneapolis Baseball and Athletic Assn.,* 185 Minn. 507, 240 N.W. 903; *Quinn v. Recreation Park,* 3 Cal. 2d 725, 46 P. 2d 144; Anno.: 142 A.L.R. 868 (p. 870 *et seq.*).

Anyone familiar with the game of baseball knows that balls are fre-
quently fouled into the stands and bleachers. Such are common incidents
of the game which necessarily involve dangers to spectators. And where
a spectator, with ordinary knowledge of the game of baseball, on finding
all screened seats filled, proceeds to sit in an unscreened stand, as did the
plaintiff under the circumstances of this case, he thereby accepts the
common hazards incident to the game and assumes the risks of injury,
and ordinarily there can be no recovery for an injury sustained as a result
of being hit by a batted ball. *Brummerhoff v. St. Louis Nat'l Baseball
Club* (Mo. App.), 149 S.W. 2d 382; *Quinn v. Recreation Park, supra;
Brisson v. Minneapolis Baseball and Athletic Assn., supra.*

The plaintiff cites and relies on the decision in *Cates v. Exhibition Co.,*
215 N.C. 64, 1 S.E. 2d 131. However, the facts here are different. The
cases are distinguishable. In any event, it was there said, as here, that
management need not provide screened seats for unusually large crowds.

Nor was the plaintiff entitled to have his case submitted to the jury
on the other theory urged by him: that the management of the ball park
was negligent in subjecting him to an extraordinary hazard by allowing
spectators from an overflow crowd to congregate in front of him in such
manner as to prevent him from seeing and dodging the ball by which
he was hit.

On this phase of the case, the plaintiff's evidence tends to show he was
seated in the bleachers on the second row from the ground. In front of
the bleachers was a mesh-wire fence about four feet high. This fence was
about six feet from the bleachers in front of plaintiff's seat. His line of
vision out on the playing field was about six inches above the top of the
mesh-wire fence. At first, the section of the bleachers in which he was
sitting was not crowded, but the "crowd kept coming." Finally, all seats
were taken. The plaintiff testified that soon after the game got under
way spectators crowded in front of him and interfered "part of the time"
with his view of the playing field, particularly home plate. He said they
were in front of him,—all along the walkway between the bleachers and
the wire fence, from a point near the grandstand up to and beyond where
he was sitting, and that some of the spectators made their way into the
spaces between the fence and the playing field.

This condition of obscured vision continued to exist, off and on, until
the game was about half over, at which time he was hit. At that par-
ticular time, he said, he could not see the batter, "because a person (was)
standing in my way inside the fence on the playing field. I did not see
the batted ball until those in front, who were able to get out of the way,
allowed the ball to pass through and I saw a white flash and simultane-
ously it crashed me on the nose." Those in front "scrambled and there

was the ball right on me. . . . I was not able to move my body and dodge it, everybody was just packed in so close together that I did not have a chance to get myself free."

In our opinion the foregoing evidence is insufficient to fix the defendant with liability on the theory of "extraordinary hazard." Especially so in view of the plaintiff's statements that "You could see home plate when you hollered out 'down in front' and they would sit. . . . If everybody had sat down, it would have been all right. . . . I would say that they attempted to stop people from moving around and milling about in front of people. There were patrolmen and policemen who I assumed were there for the purpose of trying to control the crowd."

In any event, the crowded condition complained of, which at intermittent intervals obscured the plaintiff's view, obtained for some considerable time before the mishap occurred. He was fully cognizant of what was going on. If, as the game wore on, his hazard of danger increased, he was aware of it nonetheless. That this is so is epitomized by these frank statements of the plaintiff: "I did not get up and move because I had a good position. I had a seat. . . . If everybody had sat down, I would have been all right. . . . I could see when they moved out of the way." Thus, it would seem that the plaintiff, with full knowledge of all the dangers of the occasion, voluntarily assumed the risks of his situation, or failed to exercise due care to protect himself from the natural dangers incident to his situation. And no other reasonable inference being deducible from the evidence, the motion for nonsuit was properly allowed below. 38 Am. Jur., Negligence, Sec. 349, p. 1055; *Brummerhoff v. St. Louis Nat'l Baseball Club, supra; Gaddy v. R. R.,* 175 N.C. 515, 95 S.E. 925; *Marshall v. R. R., ante,* 38, 62 S.E. 2d 489; *Weston v. R. R.,* 194 N.C. 210 (p. 216), 139 S.E. 237; 38 Am. Jur., p. 845, *et seq.;* 52 Am. Jur., p. 308, *et seq.*

Affirmed.