TERESA LYNN ALLRED AND HUSBAND, DANIEL HILLIKER, PLAINTIFFS v. CAPITAL AREA SOCCER LEAGUE, INC.; CASL SOCCER PROPERTIES LLC; WAKE COUNTY, NORTH CAROLINA; WOMEN'S UNITED SOCCER ASSOCIATION AND ALL SUCCESSORS IN INTEREST; TIME WARNER INC., FORMERLY KNOWN AS AOL TIME WARNER, INC., D/B/A TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP D/B/A CAROLINA COURAGE AND ALL SUCCESSORS IN INTEREST; AND TIME WARNER INC., FORMERLY KNOWN AS AOL TIME WARNER, INC., D/B/A TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP D/B/A NEW YORK POWER AND ALL SUCCESSORS IN INTEREST, DEFENDANTS

No. COA07-647

(Filed 16 December 2008)

**1. Negligence— spectator struck by soccer ball—duty to warn—dismissal for failure to state a claim—error**

The trial court erred by granting a Rule 12(b)(6) dismissal of a negligence complaint arising from plaintiff spectator being struck in the head by a soccer ball while sitting in the stands at a professional women's soccer game. Plaintiffs' allegations were sufficient to establish a duty to warn, a breach of that duty, and resultant damages; while defendants' duty to warn is quali-

**ALLRED v. CAPITAL AREA SOCCER LEAGUE, INC.**

[194 N.C. App. 280 (2008)]

fied to the extent the danger is known or obvious, the complaint did not contain allegations establishing actual or constructive knowledge.

## 2. Negligence— spectator struck by soccer ball—assumption of risk—dismissal for failure to state claim—error

A negligence complaint by a spectator who was struck by a soccer ball while sitting in the stands at a professional soccer match should not have been dismissed with a Rule 12(b)(6) motion based on assumption of the risk. The allegations of the complaint do not establish either actual or constructive knowledge of the danger and dismissal at this stage was not proper.

## 3. Negligence— spectator struck by soccer ball—duty to provide protective netting—dismissal for failure to state claim—error

A negligence complaint concerning a spectator who was struck by a soccer ball while watching a professional soccer match should not have been dismissed on a Rule 12(b)(6) motion on the issue of protective netting. While the body of law dealing with the duty to provide protective screening at a baseball game is well-developed, there are no reported decisions pertaining to an owner's duty at a soccer match and the scope of the owner's duty cannot be determined at this stage.

Appeal by plaintiffs from judgment entered 28 February 2007 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 14 January 2008.

*Hartsoe & Associates, PC, by R. Anthony Hartsoe and Joseph R. Schmitz, for plaintiffs-appellants.*

*Ellis & Winters LLP, by Stephen C. Keadey, for defendant-appellee CASL Soccer Properties, LLC.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Derek M. Crump, for defendant-appellee Capital Area Soccer League, Inc.*

STEELMAN, Judge.

The trial court erred in granting defendants' motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The complaint adequately alleges several causes of action in negligence against defendants and does not contain alle-

gations which on their face present an insurmountable bar to plaintiffs' recovery.

## I. Factual Summary and Procedural Background

On 26 April 2003, Teresa Lynn Allred (hereinafter "plaintiff") attended a professional women's soccer match at State Capital Soccer Park in Cary, North Carolina. Prior to the commencement of the match, plaintiff was in the stands located behind one of the goals when she was struck in the head by a soccer ball. Plaintiff sustained substantial head injuries.

On 25 April 2006, plaintiff and her husband (together, "plaintiffs") filed a complaint in Orange County Superior Court[1] which sought monetary damages for plaintiff's injuries and her husband's loss of consortium based upon the alleged negligence of defendants. On 23 June 2006, Wake County filed an answer to the complaint. On 18 July 2006 and 1 August 2006, Capital Area Soccer League, Inc. and CASL Soccer Properties LLC ("appellees") filed answers to the complaint denying the allegations of negligence, raising the affirmative defenses of contributory negligence and assumption of risk, and moving to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The motions to dismiss were heard in Wake County Superior Court on 12 February 2007.[2] On 28 February 2007, the trial court dismissed the claims of plaintiff and her husband against Capital Area Soccer League, Inc. and CASL Soccer Properties LLC, with prejudice. That same day, plaintiffs entered into a stipulation with Wake County that they would be bound by the decision of the appellate courts of North Carolina on the appeal of the 28 February 2007 order. Plaintiffs appeal.

## II. Standard of Review

On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted. *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121 (1999). Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law

---

1. The case was later transferred to Wake County.

2. On the same date, plaintiff and her husband voluntarily dismissed their claims against all of the Time Warner defendants. The record in this appeal is devoid of any service on defendant, Women's United Soccer Association, and they were thus not properly before the trial court or this Court.

supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

*Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). We "consider plaintiff's complaint to determine whether, when liberally construed, it states enough to give the substantive elements of a legally recognized claim." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 246, 567 S.E.2d 781, 786 (2002) (citations omitted), *aff'd per curiam*, 357 N.C. 46, 577 S.E.2d 620 (2003). On a Rule 12(b)(6) motion, plaintiff's factual allegations are treated as true. *Id.*

The appellate court's review of the trial court's granting of a motion to dismiss pursuant to Rule 12(b)(6) is *de novo*. *Acosta v. Byrum*, 180 N.C. App. 562, 566, 638 S.E.2d 246, 250 (2006).

## III. Factual Allegations of Complaint

Plaintiffs' complaint alleged that she attended a women's professional soccer match. Plaintiff was in the stands located immediately behind one of the soccer goals during the players' pre-game warm-ups. During the warm-ups "many balls were directed towards the nets in a relatively short period of time." One of these balls sailed over the soccer goal, into the stands, striking plaintiff and causing serious injury. Plaintiff alleged that she "had never attended a soccer game at the subject facility prior to her injury, had no knowledge or underlying information that there was a significant risk of being struck by a soccer ball."

Plaintiffs' complaint asserts that defendants were negligent in: (1) failing to warn patrons of the risk of being struck by a soccer ball leaving the field of play; (2) failing to provide a safe environment for patrons; and (3) failing to install protective netting behind the goals to protect spectators.

## IV. North Carolina Law of Spectator Injuries at Baseball Games

There are no North Carolina cases dealing with spectators injured as a result of being struck by a ball at a soccer match. The cases previously decided in North Carolina deal with spectators being struck by balls at baseball games. These cases have been uniformly decided against the spectator, either on the basis that the stadium

operator was not negligent or that the spectator assumed the risk of being hit by a baseball. *Erickson v. Baseball Club*, 233 N.C. 627, 65 S.E.2d 140 (1951); *Cates v. Exhibition Co.*, 215 N.C. 64, 1 S.E.2d 131 (1939); *Hobby v. City of Durham*, 152 N.C. App. 234, 569 S.E.2d 1 (2002).

## V. General Duty of Sporting Facility Operators to Patrons

In the case of *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), our Supreme Court abolished the common law trichotomy distinguishing a landowner's duty to licensees, invitees, and trespassers. In lieu thereof, the Supreme Court imposed upon landowners "only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Id.* at 632, 607 S.E.2d at 892. Thus, consistent with the baseball cases, *supra*, the owner of a public facility has a duty of reasonable care under the circumstances to its invitees. *See Manganello v. Permastone, Inc.*, 291 N.C. 666, 672, 231 S.E.2d 678, 681 (1977) (swimming lake operator has duty of reasonable care to paying guests); *Aaser v. Charlotte*, 265 N.C. 494, 498, 144 S.E.2d 610, 614 (1965) ("One who . . . invites others to come upon his premises to view, for a price, an athletic event being carried on therein has the duty to be reasonably sure that he is not inviting them into danger and must exercise reasonable care for their safety.") (citing *Dockery v. Shows*, 264 N.C. 406, 142 S.E.2d 29 (1965)).

We further note that the cases in this area have tended to intermingle the legal concepts of the duty owed by the sports facility owner to the patron and the patron's assumption of known and obvious risks of attending a sporting event. While these legal theories are interrelated and contain common concepts, *see* 62 Am. Jur. 2d Premises Liability § 173 (2005), they are nonetheless separate. We will treat the duty of the facility owner and the patron's assumption of risk as separate concepts.

## VI. Duty to Patrons at Baseball Games

### A. "No Duty" Rule

The duty of the operator of a baseball park to exercise reasonable care to protect its patrons does not extend to "the common hazards incident to the game." *Erickson* at 629, 65 S.E.2d at 141. This concept was articulated in the case of *Brown v. San Francisco Ball Club*, 99 Cal. App. 2d 484, 222 P.2d 19 (1950):

In baseball, . . . the patron participates in the sport as a spectator and in so doing subjects himself to certain risks necessarily and usually incident to and inherent in the game; risks that are obvious and should be observed in the exercise of reasonable care. This does not mean that he assumes the risk of being injured by the proprietor's negligence but that by voluntarily entering into the sport as a spectator he knowingly accepts the reasonable risks and hazards inherent in and incident to the game.

*Id.* at 487, 222 P.2d at 20.

The law in this area was summarized by Professor Timothy Davis in the Marquette Sports Law Review:

Thus, the prevailing principle is that "there is no legal duty to protect or warn spectators about the 'common, frequent, and expected' inherent risks of observing a sporting event such as being struck by flying objects that go into the stands." With respect to the role of knowledge, generally "adult spectators of ordinary intelligence" who are familiar with the sports at issue will be presumed to possess an awareness of the normal risk of watching a sport, such as baseball. Another general rule that can be derived from the spectator cases is that while an owner may not owe a duty of care to spectators for inherent risks, the owner or facility operator must do nothing to enhance the risks that are inherent to a particular sport.

Timothy Davis, *Symposium: National Sports Law Institute Board of Advisors: Avila V. Citrus Community College District: Shaping the Contours of Immunity and Primary Assumption of the Risk*, 17 Marq. Sports L. Rev. 259, 271-72 (2006) (internal footnotes citing authorities omitted).

The "no duty" rule has been followed in North Carolina:

As a general proposition, there is no duty to protect a lawful visitor against dangers which are either known to him or so obvious and apparent that they reasonably may be expected to be discovered. *Wrenn v. Convalescent Home*, 270 N.C. 447, 448, 154 S.E.2d 483, 484 (1967); *see* 62 Am. Jur. 2d Premises Liability § 147 (1990) (owner liable only if condition known or should have been known by him and not known or should not have been known by the injured visitor).

*Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 162, 516 S.E.2d 643, 646 (1999). The footnote in *Lorinovich* points out that "[a]lthough

this 'no duty' rule for obvious dangers 'bears a strong resemblance to the doctrine of contributory negligence,' 62 Am. Jur. 2d Premises Liability § 149 (1990), it in fact negates the defendant's duty of care and eliminates any occasion for reliance on the defense of contributory negligence." *Lorinovich* at 162, 516 S.E.2d at 646, footnote 1; *see also* 62 Am. Jur. 2d Premises Liability § 173 (2005) (stating that the "no duty" rule is technically distinguishable from the doctrine of assumption of risk, or the "volenti doctrine.").

The courts of North Carolina have also applied the "no duty" doctrine in the context of a defendant's duty to warn, holding that there is no duty to warn against dangers either known or so obvious and apparent that they should have reasonably been discovered by plaintiff. *Bolick v. Bon Worth, Inc.*, 150 N.C. App. 428, 430, 562 S.E.2d 602, 604, *disc. rev. denied*, 356 N.C. 297, 570 S.E.2d 498 (2002).

It is apparent from the baseball cases decided in other jurisdictions that it has been accepted as a matter of law that a patron's being struck in the stands by an errant baseball was an inherent and obvious risk of attending the game. The only exceptions appear to be from unusual events not inherent in the game. *E.g., Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 87, 394 A.2d 546, 552 (1978) (holding that the "no duty" rule did not apply to a spectator struck by a baseball while using an interior walkway).

The "no duty" rule was not abolished when the distinction between duties owed by landowners to licensees and invitees was abolished by *Nelson v. Freeland, supra. Lorinovich* at 162, 516 S.E.2d at 646; *see also* 62 Am. Jur. 2d Premises Liability § 170 (2005).

### B.  Providing Some Screened Spectator Seating Discharges Duty

When an operator of a baseball facility provides some seating which has a screen to protect patrons from errant baseballs, they "are held to have discharged their full duty to spectators in safeguarding them from the danger of being struck by thrown or batted balls[.]" *Cates*, 215 N.C. at 66, 1 S.E.2d at 133. This rule applies even if there is an unusually large crowd, and patrons desiring screened seating are unable to obtain it. *Erickson*, 233 N.C. at 628, 65 S.E.2d at 141. In *Hobby v. City of Durham*, this Court followed *Cates*, holding that plaintiff failed to sufficiently allege negligence on the part of an operator of a baseball facility where a portion of the stands was protected by screening. 152 N.C. App. at 237, 569 S.E.2d at 2-3.

## VII. Assumption of Risk

Assumption of risk is an affirmative defense which must be pled by the party seeking to invoke it. *Robinson v. Powell*, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998); N.C. Gen. Stat. § 1A-1, Rule 8(c). The party asserting an affirmative defense has the burden of proof to establish all elements of the defense. *Price v. Conley*, 21 N.C. App. 326, 328, 204 S.E.2d 178, 180 (1974).

The concept of assumption of risk has frequently been utilized in sports spectator injury cases to bar recovery by plaintiffs. This was the basis for the affirmation of nonsuit at the close of plaintiffs' evidence in *Erickson, supra,* 233 N.C. at 630, 65 S.E.2d at 142 ("plaintiff, with full knowledge of all the dangers of the occasion, voluntarily assumed the risks of his situation, or failed to exercise due care to protect himself from the natural dangers inherent to his situation.").

The two elements of the common law defense of assumption of risk are: (1) actual or constructive knowledge of the risk, and (2) consent by the plaintiff to assume that risk. Charles E. Daye and Mark W. Morris, North Carolina Law of Torts § 19.22, at 328 (2nd ed. 1999) ("Under this doctrine, the plaintiff is barred from recovery if he knew of the risk created by the defendant and knowingly placed himself in a position to be injured by it."); *see also Cobia v. R. R.*, 188 N.C. 487, 491, 125 S.E. 18, 21 (1924) (" 'Assumed risk is founded upon the knowledge . . . either actual or constructive, of the risks to be encountered, and his consent to take the chance of injury therefrom.' ") (quoting *Horton v. R. R.*, 175 N.C. 472, 475, 95 S.E. 883, 884 (1918) and 1 Labatt on Master and Servant §§ 305 and 306).

The case of *Schentzel v. Phila. Nat'l League Club*, 173 Pa. Super. 179, 96 A.2d 181 (1953), is instructive:

> It is clear that plaintiff did not expressly consent to accept the hazard which caused her injury. However, consent may be implied from conduct under the circumstances. We quote at length from Prosser on Torts at pages 383-384: "By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it, and to agree that he will look out for himself, and relieve the defendant of responsibility. *Those who* participate or *sit as spectators at sports* and amusements *assume all the obvious risks of being hurt by* roller coasters, *flying balls, . . . .*

*Id.* at 186-87, 96 A.2d at 185 (citations omitted) (emphasis in original). Thus, a plaintiff's consent to assume a risk may be either express or implied.

The principles of assumption of risk apply not only to being struck during the course of a game, but also to preliminary or warm-up activities. *Taylor v. Baseball Club of Seattle*, 132 Wn. App. 32, 39, 130 P.3d 835, 838 (2006) (holding that "it is undisputed that the warm-up is part of the sport, that spectators . . . purposely attend that portion of the event, and that the Mariners permit ticket holders to view the warm-up.").

## VIII.  Application of Law to Allegations in Plaintiff's Complaint

[1] In their first argument, plaintiffs contend that the trial court erred in dismissing their complaint because they properly pled that defendants owed plaintiff a duty of reasonable care, that the duty was breached, and plaintiff suffered damages as a proximate cause of that breach. We agree.

### A.  Defendants' Negligence

As noted above, defendants owed plaintiff a duty of reasonable care. *Nelson v. Freeland*, 349 N.C. at 632, 607 S.E.2d at 892; *Cates*, 215 N.C. at 65-66, 1 S.E.2d at 132-33. Plaintiffs assert that the defendants were negligent in failing to warn patrons of the danger from soccer balls leaving the field of play, failure to provide a safe environment, and failure to install protective netting behind the goals. Plaintiffs also alleged that defendants had superior knowledge of the risks that led to her injuries and that their negligence caused those injuries. These allegations are adequate to establish a duty, a breach of that duty, and damages arising out of the alleged breach of duty.

The defendants' duty to warn is qualified to the extent that the danger is known or so obvious that the plaintiff should have been aware of it. The question thus becomes whether plaintiffs' complaint contains allegations which affirmatively establish actual or constructive knowledge, *e.g.*, that the danger was either known to the plaintiff or so open and obvious that it should have been known to the plaintiff. We hold that it does not.

Regarding actual knowledge, plaintiffs' complaint specifically alleged that plaintiff "had no knowledge or underlying information that there was a significant risk of being struck by a soccer ball when

attending such events at this facility." **(R. 11, ¶ 21).** We hold that this allegation is sufficient to withstand defendants' Rule 12(b)(6) motion on the basis of plaintiff's actual knowledge.

Regarding constructive knowledge, defendants argue that other allegations in plaintiffs' complaint clearly demonstrate that the danger of a patron being struck by a soccer ball was open and obvious:

> . . . it was reasonably foreseeable by each of the defendants that a soccer ball could fly into the stands, especially behind the goals, especially during practice when many balls were directed toward the nets in a relatively short period of time.

**(R. 11-12, ¶ 23).** This allegation by plaintiffs was made in support of their argument that defendants should have provided netting behind the goals. Defendants contend that if it was reasonably foreseeable to the defendants that this was a danger to spectators, then it must have also been reasonably foreseeable to the plaintiff, and thus an "open and obvious" condition.

We disagree for two reasons. First, this allegation was specifically qualified and based upon defendants' "particular knowledge of the sport of soccer." Nothing in the complaint intimates that plaintiff possessed this particularized knowledge, or that a reasonable person attending a soccer match would possess such particularized knowledge. Second, on a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's allegations are to be liberally construed and treated as true. *Wood v. Guilford County*, 355 N.C. at 166, 558 S.E.2d at 494. Applying this standard, we cannot say that the complaint alleges an open and obvious condition. *Lorinovich*, 134 N.C. App. at 162, 516 S.E.2d at 646; *see also* 62 Am. Jur. 2d Premises Liability §§ 147, 171 (considering plaintiff's knowledge and owner's superior knowledge in determining defendant's duty to warn).

Finally we note that, while plaintiffs' allegation of no knowledge of the danger based on not having been to an event at this particular stadium is sufficient to withstand a motion to dismiss at this stage of the proceedings, it may not be sufficient to withstand a motion for summary judgment or a motion to dismiss at trial. Whether the plaintiff had knowledge of the danger is not limited to her experience at this particular stadium, but would encompass her knowledge of soccer in general, and of the sport derived from attendance at other venues. Further, the issue of whether a condition was open and obvious is also to be analyzed by whether the conditions were "so obvi-

ous and apparent that they reasonably may be expected to be discovered." *Lorinovich, supra,* 134 N.C. App. at 162, 516 S.E.2d at 647.

### B. Assumption of Risk by Plaintiff

**[2]** Defendants contend that plaintiffs' complaint clearly reveals that she assumed the risk of being struck by the soccer ball when she attended the soccer match. We first note that assumption of risk is an affirmative defense upon which defendants have the burden of proof. Second, the first element of assumption of risk is the plaintiff's actual or constructive knowledge of the risk. As discussed above, the allegations of plaintiffs' complaint do not affirmatively establish either actual or constructive knowledge of the danger. Thus, it was improper for the trial court to dismiss the plaintiffs' complaint at the motion to dismiss stage of the proceedings.

In North Carolina, the doctrine of assumption of risk has been generally limited to cases where there was a contractual relationship between the parties. *Goode v. Barton,* 238 N.C. 492, 496, 78 S.E.2d 398, 402 (1953); *Cobia v. R. R.,* 188 N.C. at 491, 125 S.E. at 21. We have discussed assumption of risk in detail because it was raised and discussed extensively by the parties in their briefs. Plaintiffs' complaint alleges that she was "a lawful visitor and spectator at the soccer match" **(R. 11, ¶ 20)** and makes a passing reference to ticket stubs. **(R. 12, ¶ 25).** At this early stage of the proceedings, we treat these allegations as sufficient to support some type of contractual relationship which would make the doctrine of assumption of risk applicable.

### C. Duty to Provide Protective Netting for Spectators

**[3]** Plaintiffs contend that defendants were negligent in failing to provide protective netting behind the soccer goals. It is clear from the baseball cases that the owner of a sports facility is not required to provide screening for all seats, only a portion of the seats. *Erickson,* 233 N.C. 627, 65 S.E.2d 140; *Cates,* 215 N.C. 64, 1 S.E.2d 131; *Hobby,* 152 N.C. App. 234, 569 S.E.2d 1. While the fact of some screening would bar recovery, *id.,* plaintiffs' complaint does not affirmatively disclose whether there was *any* protective screening at State Capital Soccer Park.

Thus, the appropriate standard remains the facility owner's general duty of reasonable care, which varies with the circumstances. *Aaser v. Charlotte,* 265 N.C. at 498-99, 144 S.E.2d at 614.

**ALLRED v. CAPITAL AREA SOCCER LEAGUE, INC.**

[194 N.C. App. 280 (2008)]

Since what constitutes reasonable care varies with the circumstances, the vigilance required of the owner of the arena in discovering a peril to the invitee and the precautions which he must take to guard against injury therefrom will vary with the nature of the exhibition, the portion of the building involved, the probability of injury and the degree of injury reasonably [foreseeable].

The duty of the owner extends to the physical condition of the premises, themselves, and to contemplated and foreseeable activities thereon by the owner and his employees, the contestants and the spectators. The amount of care required varies, but the basis of liability for injury to the invitee from any of these sources is the same—the failure of the owner to use reasonable care under the circumstances.

*Id.* We consider the rationale in *Hagerman v. City of Niagara Falls* to be persuasive:

As to what constitutes reasonable protection, Courts have looked to the protection customarily provided in facilities designed for the viewing of a particular sport: *see Klyne v. Town of Indian Head et al.* (1979), 107 D.L.R. (3d) 692, [1980] 2 W.W.R. 474, 1 Sask. R. 347; *Murray et al. v. Harringay Arena Ltd.*, [1951] 2 K.B. 529, and *Elliott v. Amphitheatre, supra.*

*Hagerman*, 29 O.R.2d 609, 614 (Ont. S.C. (H.C.J.) 1980). While the body of law dealing with the duty to provide protective screening at a baseball game is well-developed, there are no reported decisions pertaining to an owner's duty at a soccer match. The scope of an owner's duty should be determined in accordance with the standard set forth in *Hagerman* and *Aaser*. Based upon the allegations contained in plaintiffs' complaint, this cannot be done at the pleadings stage of the proceedings.

## IV. Conclusion

A review of the cases dealing with spectator injuries at sporting events reveals that the overwhelming number of these cases are resolved at the summary judgment or trial stage of the proceedings. One exception to this is the *Hobby* case, a baseball case resolved upon a Rule 12(b)(6) motion. However, the law concerning spectator injuries at baseball games has been more fully developed than that at soccer games. A review of cases throughout the United States reveals only two cases dealing with spectator injuries at soccer matches. *Sutton v. E. New York Youth Soccer Ass'n*, 8 A.D.3d 855, 779 N.Y.S.2d

149 (2004); *Honohan v. Turrone*, 297 A.D.2d 705, 747 N.Y.S.2d 543 (2002). Each of these cases was decided upon a motion for summary judgment and not upon a motion to dismiss.

It is rare that a negligence claim should be dismissed upon the pleadings. *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 491, 411 S.E.2d 916, 920 (1992). Such dismissals should be limited to cases where there is a clear, affirmative allegation of a fact that necessarily defeats a plaintiff's claims. *See Wood v. Guilford County*, 355 N.C. at 166, 558 S.E.2d at 494. We hold that the trial court's dismissal of plaintiffs' claims in the instant case was premature.

REVERSED AND REMANDED.

Chief Judge MARTIN and Judge STEPHENS concur.