# IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-510

Filed: 31 December 2020

Durham County, No. 16 CVS 1599

WILIAM S. MILLS, as Guardian ad Litem for ANGELINA DEBLASIO, Plaintiff,

v.

THE DURHAM BULLS BASEBALL CLUB, INC., Defendant.

Appeal by Plaintiff from an order entered 28 December 2018 by Judge Eric C. Morgan in Superior Court, Durham County. Heard in the Court of Appeals 3 December 2019.

> *Ward & Smith, P.A., by Alexander C. Dale, A. Charles Ellis, and Christopher S. Edwards, for Plaintiff-Appellant.*
>
> *Fox Rothschild LLP, by D. Erik Albright and Kip David Nelson, for Defendant-Appellee.*

McGEE, Chief Judge.

Plaintiff Angelina DeBlasio ("Plaintiff"),[1] who was hit and injured by a foul ball at a baseball game, appeals from an order granting summary judgment in favor of The Durham Bulls Baseball Club, Inc. ("Defendant") and dismissing her complaint. On appeal, Plaintiff contends that the common law "Baseball Rule," which disclaims liability for baseball stadium operators who satisfy their duty to protect patrons from errant balls by providing an adequate number of screened seats, *Bryson v. Coastal*

---

[1] Though formally represented by her Guardian ad Litem, we refer to Angelina DeBlasio as the singular "Plaintiff" for simplicity and ease of reading.

*Plain League, LLC*, 221 N.C. App. 654, 656–57, 729 S.E.2d 107, 109–10 (2012), does not apply to the facts of this case. Though Plaintiff undoubtedly suffered a painful and unfortunate injury, we hold that the Baseball Rule is applicable and affirm the trial court's order.

## I. Factual and Procedural History

Plaintiff was born in 2004 in the Pittsburgh, Pennsylvania area. Plaintiff took up softball while living in Pittsburgh, and attended several Pittsburgh Pirates games in 2014 and 2015 with her family. Plaintiff's younger siblings both play either baseball or softball, and baseball is a popular sport with Plaintiff's parents and siblings; since 2014, Plaintiff's family would get together and watch three or four Major League Baseball playoff games on TV each season. Plaintiff paid attention to the majority of each game she watched on TV or attended in person.

Plaintiff's father worked for Panasonic Avionics ("Panasonic"), a job which led Plaintiff's family to relocate to North Carolina in 2015. To celebrate the move and introduce Plaintiff's family to the other area employees, Panasonic arranged for a picnic meet-and-greet at Durham Bulls Athletic Park during a baseball game hosted by the Durham Bulls on 5 August 2015. Panasonic reserved a publicly accessible picnic area called the Bull Pen Picnic Area ("Picnic Area") for the event.

The Picnic Area is an open-air section of the stadium situated behind the left-field foul line in the corner of the outfield at one of the furthest spots in left field from

home plate. Located at about field level and—as of 5 August 2015—separated from the area of play only by a low wall, the Picnic Area is outside the 110 feet of protective netting that runs from behind home plate towards each team's dugout. The portion of the Picnic Area closest to the field includes picnic tables with umbrellas, while the area furthest from the field is open space. Three warning signs are posted along the Picnic Area's field wall, stating "PLEASE BE AWARE OF OBJECTS LEAVING THE PLAYING FIELD," and other similar signs are placed throughout the stadium. Prior to each game, the Durham Bulls play an announcement over the public address system warning visitors that baseballs may "come flying at ya' at a high rate of speed, so please stay alert while you're in the seating bowl."

On the night of the picnic, Plaintiff's family arrived at the ballpark around 6:15 p.m. and learned for the first time that they would be sitting in the Picnic Area. They made their way to the Picnic Area before the game started and took pictures of several players warming up. Plaintiff did not pay attention to the game once it started, later testifying at deposition that she saw "[j]ust a little bit" of the game. Instead, Plaintiff spent most of her time talking to her parents while occasionally getting food from the buffet at the back of the Picnic Area. Plaintiff's father paid closer attention to the game and saw three or four foul balls enter the stands during play. He also spoke to one of the players from the visiting team, who sometimes sat on the low wall separating the Picnic Area from the field. Neither he nor his daughter heard the

public announcement about errant balls, nor did they see any of the signs warning attendees about objects leaving the field.

Around 8:00 p.m., as Plaintiff was seated on a bench facing the field and talking to her mother, a foul ball exited the field of play, entered the Picnic Area, and struck Plaintiff in the face. She suffered severe injuries, including multiple dislocated teeth and broken bones in and around her jaw. She was taken from the stadium to Duke University Medical Center's Emergency Department, where she underwent endodontic and orthodontic surgeries later that night. She returned to the Medical Center the following month for additional endodontic and orthodontic surgery.

Plaintiff filed suit against Defendant on 21 December 2016, alleging one count of negligence in connection with the events of 5 August 2015. Defendant filed an answer on 28 February 2017 and, following discovery, moved for summary judgment on 13 November 2018. In its motion, Defendant asserted that "[u]nder long-standing North Carolina precedent known as the 'baseball rule,' . . . Defendant was not negligent as a matter of law." The trial court granted Defendant's motion and entered an order dismissing Plaintiff's complaint on 28 December 2018. Plaintiff appeals.

## II. Analysis

Plaintiff's appeal from summary judgment is subject to *de novo* review. *Bryson*, 221 N.C. App. at 656, 729 S.E.2d at 109. The trial court's grant of summary

judgment will be affirmed "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). To demonstrate a valid cause of action for negligence at the summary judgment stage, a claimant must forecast evidence showing that: "'(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered damages as a result of the injury.'" *Hamby v. Thurman Timber Co., LLC*, 260 N.C. App. 357, 363, 818 S.E.2d 318, 323 (2018) (quoting *Wallen v. Riverside Sports Ctr.*, 173 N.C. App. 408, 411, 618 S.E.2d 858, 861 (2005)).

The parties dispute whether the common law Baseball Rule necessarily defeats Plaintiff's claim based on the evidence presented at summary judgment. Under the Rule, baseball field "operators 'are held to have discharged their full duty to spectators in safeguarding them from the danger of being struck by thrown or batted balls by providing adequately screened seats for patrons who desire them, and leaving the patrons to their choice between such screened seats and those unscreened.'" *Bryson*, 221 N.C. App. at 657, 729 S.E.2d at 109 (quoting *Cates v. Cincinnati Exhibition Co.*, 215 N.C. 64, 66, 1 S.E.2d 131, 133 (1939)). That duty is discharged

even when there are not enough screened seats to meet the demand for them. *Id.* at 657, 729 S.E.2d at 109–10. In other words:

> Reasonable care is all that is required,—that is, care commensurate with the circumstances of the situation,—in protecting patrons from injuries.
>
> And the duty to exercise reasonable care imposes no obligation to provide protective screening for all seats . . . . Nor is management required, in order to free itself from negligence, to provide protected seats for all who may possibly apply for them. It is enough to provide screened seats, in the areas back of home plate where the danger of sharp foul tips is greatest, in sufficient number to accommodate as many patrons as may reasonably be expected to call for them on ordinary occasions.

*Erickson v. Lexington Baseball Club*, 233 N.C. 627, 628, 65 S.E.2d 140, 141 (1951) (citations omitted).

In this case, Plaintiff argues that the Baseball Rule should not apply for five reasons: (1) Plaintiff lacked sufficient knowledge of the game of baseball to understand that foul balls could be hit into the stands and cause injury to unprotected spectators; (2) she did not have a choice between sitting in the Picnic Area and the stadium's screened seats; (3) she was not, in fact, a spectator, as she considered herself to be attending a company picnic rather than a baseball game; (4) the Picnic Area was negligently designed and that negligent design caused Plaintiff's injury; and (5) the Baseball Rule, created at a time when baseball was central to and

synonymous with American popular culture and sport, should be abandoned as outdated. We address each argument in turn.

In her first argument, Plaintiff maintains that the Baseball Rule applies only to cases in which a spectator of sufficient age and experience with the game of baseball is hit by an errant baseball based on the following language from *Cates*: "[']We believe that as to all who, *with full knowledge of the danger from thrown or batted balls*, attend a baseball game the management cannot be held negligent when it provides a choice between a screened in and an open seat[.][']" *Cates*, 215 N.C. at 66, 1 S.E.2d at 132 (emphasis added) (quoting *Wells v. Minneapolis Baseball & Athletic Assoc.*, 142 N.W. 706, 707 (1913)). Plaintiff asserts that because she was eleven years old at the time of the injury and had never personally witnessed a foul ball enter the stands, she lacked "full knowledge of the danger from thrown or batted balls." *Id.* The contention fails, however, because evidence introduced at the trial level demonstrates Plaintiff had adequate knowledge of the game under North Carolina law to be aware of the danger posed by foul balls regardless of whether she had ever personally witnessed one enter the stands.

Our Supreme Court has held that "*[a]nyone* familiar with the game of baseball knows that balls are frequently fouled into the stands and bleachers. Such are common incidents of the game which necessarily involve dangers to spectators." *Erickson*, 233 N.C. at 629, 65 S.E.2d at 141 (emphasis added). Plaintiff certainly had

this "ordinary knowledge of the game of baseball," *id.*, based on the uncontroverted evidence introduced below. She had attended multiple baseball games in person, watched several games on TV, and played softball[2] for several years prior to attending the game in question. Plaintiff paid close attention to all of the games she attended or saw on TV. At the games she attended, she "watch[ed] . . . for the entire time [she] was there" with the exception of trips to the bathroom and concessions; as for the games she watched on TV, she paid attention to about "85 percent" of each game. We hold that, as stated by our Supreme Court, Plaintiff, like "anyone familiar with the game," *Erickson*, 233 N.C. at 629, 65 S.E.2d at 141, had sufficient knowledge of the sport to comprehend the danger of balls fouled into the stands even if she had never witnessed such an event herself.

Plaintiff's subsequent assertion that she did not have a choice of seats does not preclude application of the Baseball Rule. The "choice" embodied in the Rule is the choice on the part of the spectator to attend a baseball game in an unprotected seat when the ballpark operator has satisfied its duty to protect patrons by offering a reasonable number of protected seats. *Id.* at 628, 65 S.E.2d at 140–41. For example, in *Erickson*, a spectator struck by a ball attempted to sue the stadium operator "on the theory that the defendant was negligent in not providing him with a choice

---

[2] The Baseball Rule applies to both softball and baseball. *See Bryson*, 221 N.C. App. at 657, 729 S.E.2d at 110 (applying the Rule to "[p]ersons familiar with the game of softball or baseball" (citation and quotation marks omitted)).

between screened and unscreened seats." *Erickson*, 233 N.C. at 628, 65 S.E.2d at 140. The plaintiff bought a general admission ticket and arrived at the game "about ten minutes before game time" when "[a]ll of the screened seats were then occupied." *Id.* at 628, 65 S.E.2d at 141.

Our Supreme Court held on these facts that "[t]he defendant's failure to provide the plaintiff with a screened seat . . . [did] not support an issue of actionable negligence." *Id.* This was the case because the ballpark operator had provided a reasonable number of screened seats and, even though those seats were unavailable to the plaintiff, he chose to sit in an unprotected seat with knowledge that he could be injured by a batted ball. *Id.* at 628–29, 65 S.E.2d at 141. Plaintiff and her family, in this case, arrived at a baseball game to learn that they would not be seated in a protected area of the stadium and, with adequate knowledge of baseball to recognize the danger posed by foul balls, nonetheless chose to stay and sit in an unprotected area. As in *Erickson*, the Baseball Rule precludes recovery for spectators who make such a choice. *Id.*

Plaintiff's argument that she did not consider herself to be a "spectator" because she was at the stadium to attend a company picnic also does not preclude application of the Baseball Rule. Even though Plaintiff had no plans to watch the game and considered herself to be attending a picnic, there can be no serious dispute from the evidence that she did not know she was at a picnic in a baseball stadium

while a baseball game was taking place. Plaintiff's deposition testimony unambiguously shows that she knew she was in a baseball stadium, that she was aware a baseball game was underway while she was in the Picnic Area, and that the game could be observed from that area; indeed, she testified that she watched players warm-up before the game and even caught "a little bit" of the game while it was underway. Plaintiff was, for all intents and purposes, a "spectator" within the meaning of the Baseball Rule. *Cf. Wheeler v. Central Carolina Scholastic Sports, Inc.*, 253 N.C. App. 240, 798 S.E.2d 438, 2017 WL 1381646, *1 (Unpublished) (applying the Baseball Rule to a plaintiff who was struck by a ball while talking to a friend behind a fence beside the stadium bleachers), *aff'd per curiam*, 370 N.C. 390, 808 S.E.2d 143 (2017). Plaintiff's argument on this point is one of semantics rather than law and does not render the Baseball Rule inapplicable.

Plaintiff's fourth argument states that the Baseball Rule does not apply because Defendant negligently designed the Picnic Area and those negligent design elements were the proximate cause of her injury. *See Cates*, 215 N.C. at 66–67, 1 S.E.2d at 132 (holding the Baseball Rule applied where there was no evidence that the stadium was negligently designed or that the design of the stadium caused the plaintiff's injury). She specifically contends that the Picnic Area was negligently designed in that it "purposefully distracts patrons from the game" in the following ways: (1) patrons in the Picnic Area have to turn their backs to the game to get food

from the buffet at the rear of the space; (2) several of the picnic tables allow patrons to sit with their backs to the game while eating or socializing; (3) umbrellas which extend above the picnic tables may obscure lines of sight; and (4) visiting players sometimes sit on the low wall separating the Picnic Area from the field, which could block views of the game. She argues that these elements dangerously "beckon[] patrons to turn their backs to the game and to ignore baseball's dangers," which in turn led Plaintiff and her family to think the Picnic Area was "a safe place" insulated from baseball's inherent risks.

Plaintiff has introduced no evidence demonstrating that the above design elements actually contributed to her injury and thus her argument lacks merit. The record shows that Plaintiff was sitting at a picnic table that was directly adjacent to the low wall and on a side with views of home plate at the time she was struck by a foul ball.[3] No evidence suggests—and Plaintiff points to none—that the foul ball that hit her was obscured by an umbrella or player from the opposing team. Defendant directly sought to dispel any indication that the Picnic Area was free from the dangers posed by foul balls by placing three signs along the low wall specifically warning

---

[3] That Plaintiff was speaking to her mother, who was sitting at the same picnic table when Plaintiff was struck, does not show that the Picnic Area was negligently designed; professional baseball games are inherently social events where people congregate to cheer players and teams together. It is both expected and routine for attendees to speak to those around them during the game, no matter where they may be seated. Plaintiff, who was speaking to her mother from a bench next to the field with a view of home plate, was thus not engaged in an activity particular to the Picnic Area's design when injured. *Cf. Wheeler*, 2017 WL 1381646 at *1 (applying the rule to a plaintiff who was talking to a friend at the time of his injury).

attendees to "BE AWARE OF OBJECTS LEAVING THE PLAYING FIELD." In sum, no design elements identified by Plaintiff appear to have interfered with Plaintiff's ability to avoid injury, and neither did they convey that foul balls could not enter the Picnic Area. Because the evidence does not show the design of the Picnic Area caused or contributed to her injury, we hold the Baseball Rule applies to this case. *Cates*, 215 N.C. at 66–67, 1 S.E.2d at 132.

In her final argument, Plaintiff argues that the Baseball Rule should be abandoned as archaic and out-of-step with the sport's arguably diminished place in popular culture compared to its historical primacy in the American sporting landscape. Because the Rule was announced by our Supreme Court, applied by prior panels of this Court, and has not been disclaimed by a higher court, we are without authority to set it aside. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

## III. Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment for Defendant and dismissing Plaintiff's complaint.

AFFIRMED.

Judges TYSON and ZACHARY concur.