McCULLOUGH, Judge.
Kelly Nicole McCauley ("plaintiff") appeals from the trial court's order granting a directed verdict in favor of Steven Eugene Thomas ("defendant") and intervenor Progressive Universal Insurance Company ("Progressive") upon finding that plaintiff was grossly contributorily negligent as a matter of law. We reverse.
I. Background
Plaintiff initiated this action against defendant on 4 October 2013 in Lee County Superior Court to recover for injuries she sustained in a single vehicle automobile accident allegedly caused by defendant's negligence. Specifically, plaintiff alleged the following:
3. That on January 18, 2012 at approximately 11:44 p.m., the plaintiff was a passenger in a 2006 Ford vehicle owned and operated by the defendant.
4. That on the date and at the time referred to above, the defendant was operating his vehicle east on SR 1469, when he encountered a dead end, struck a tree and a fence, before coming to rest off of the roadway.
5. That the impact of the collision referred to above caused the plaintiff personal injuries.
6. That at the time of the collision described above and immediately prior thereto, the defendant was negligent in that he:
(a) Failed to keep a proper lookout;
*423 (b) Failed to reduce speed to the extent necessary to avoid a collision;
(c) Failed to keep his vehicle under proper control;
(d) Drove in a careless and reckless manner.
7. That as a proximate result of defendant's negligence and of the collision referred to above, the plaintiff was injured and underwent medical care and treatment and, upon information and belief, will continue to need medical treatment into the future.
8. That as a proximate result of defendant's negligence and of the personal injuries suffered by the plaintiff, she has incurred medical expenses and, upon information and belief, it is alleged that she will continue to incur medical expenses into the future.
9. That as a proximate result of the collision referred to above, the plaintiff has experienced pain, suffering and discomfort and, upon information and belief, it is alleged she will continue to experience pain, suffering and discomfort into the future as a result of the injuries she sustained in the motor vehicle collision.
In response to plaintiff's complaint, defendant filed an answer on 15 January 2014, in which defendant denied all allegations of negligence and, among other defenses, pleaded contributory negligence and gross contributory negligence as bars to plaintiff's recovery. Plaintiff responded to defendant's allegations of contributory negligence and gross contributory negligence by asserting defendant had the last clear chance to avoid the accident.
Following the denial of motions to dismiss by defendant, an unsuccessful attempt at mediation, and the intervention of Progressive on behalf of defendant[1] , this case came on for jury trial in Lee County Superior Court on 14 July 2014, the Honorable Thomas H. Lock, Judge presiding. Each side called only one witness at trial.
Plaintiff first took the stand and testified that she and defendant were in a relationship at the time of the automobile accident. Plaintiff testified that on the night of the accident, 18 January 2012, she and defendant went on a date to San Felipe, a restaurant in Sanford which was offering a margarita special. Over the course of two hours at the restaurant, plaintiff and defendant ate dinner and drank margaritas. Plaintiff could not recall the exact number of drinks she and defendant consumed, but testified she had no more than three and defendant probably drank one or two more than she did.
Plaintiff testified she and defendant had a good time at dinner and she was feeling the effects of the alcohol by the time they were ready to leave. As a result, plaintiff allowed defendant to drive. When questioned whether she "voluntarily rode with [defendant] after knowing he consumed four or five margaritas in [her] presence," plaintiff responded affirmatively. Yet, plaintiff indicated defendant drank several times a week and was a "far more experienced drinker than [she] was." Plaintiff further testified defendant did not have any problems walking or exiting the restaurant and averred "[defendant] definitely wasn't intoxicated."
From the restaurant, plaintiff and defendant went to defendant's mother's house. Plaintiff indicated she did not complain about defendant's driving between the restaurant and defendant's mother's house. Plaintiff and defendant were at defendant's mother's house for approximately an hour and a half. Plaintiff testified that, to her knowledge, defendant did not consume any alcohol after leaving the restaurant. Yet, plaintiff acknowledged defendant was not in her presence for the entire time they were at defendant's mother's house.
From defendant's mother's house, plaintiff and defendant traveled to plaintiff's house on the other side of Sanford, a thirty-five to forty minute drive. Defendant drove as plaintiff was still feeling the effects of the alcohol. Again, plaintiff indicated she voluntarily rode with defendant.
*424 Plaintiff testified that on the way to her house, she and defendant got into an argument. Plaintiff could not remember what the argument was about, but recalled that it was a silly argument. Plaintiff indicated defendant was driving poorly at the time. As a result of defendant's poor driving and because he was yelling at her, plaintiff told defendant to pull over and let her out. Plaintiff testified defendant did pull over, but the downtown area of Sanford where he pulled over was not an area a single female would want to be late at night. Thus when defendant apologized and said he would not say another word and would just take plaintiff home and drop her off, plaintiff agreed.
Plaintiff testified they were silent the rest of the way until they made the turn onto West Forest Oaks near plaintiff's house. After making a normal turn onto West Forest Oaks, plaintiff said defendant "just blew up." Plaintiff testified defendant "gassed it immediately[ ]" and accelerated the vehicle to 35 to 45 miles per hour. Plaintiff explained,
it's like a bomb went off inside of him or something. He turns on the road, and he gases [sic] the car. And it's not a very long road. It's a dead end. There's like a little guard rail and little reflector signs at the bottom. He sees, and he's yelling, and he's screaming, and I'm just-I'm apologizing, trying to get him to stop.
Upon further questioning, plaintiff testified "[i]t wasn't like a gradual like, you know, like a normal you gradually get up to 35 miles an hour." When defendant pointed out that plaintiff testified about different speeds, plaintiff admitted she did not know the exact speed, but explained the last time she looked over she saw they were going 35 miles per hour and defendant was still accelerating. Plaintiff recalled "apologizing, begging [defendant] to just please stop, please slow down." Then they crashed.
Although plaintiff's recollection of the actual collision was poor, plaintiff remembered going forward and to the left and hitting her head on the gear shifter and the console that it sits in. The next things plaintiff remembered were police officers and being in the hospital. Plaintiff suffered injuries to her face, jaw, and mouth as a result of the accident.
At the conclusion of the plaintiff's attorney's questioning of her, plaintiff reiterated that she did not observe anything prior to the accident or argument that would have led her to believe defendant was driving in an impaired condition. Plaintiff did not observe anything about defendant's speech that caused alarm, did not observe defendant's eyes being glassy, and did not think defendant was unsteady on his feet.
Plaintiff rested following plaintiff's testimony, at which time defendant moved for a directed verdict on the ground that plaintiff was grossly contributorily negligent as a matter of law. In support of his motion, defendant reiterated portions of plaintiff's testimony, cited several cases standing for the proposition that a passenger who knows or should know that a driver is intoxicated cannot recover for injuries sustained from riding with the driver, and argued the following:
[Plaintiff], by her own testimony, has admitted she should have known, and because of that, I ask that the Court grant directed verdict in favor of the [d]efendant finding that, even if the other issues are resolved in favor of the [p]laintiff, that, under the facts of this case, given their presence together from before dinner to the time of the wreck, given the amount of alcohol consumed in each other's presence with no evidence of alcohol being consumed outside of each other's presence, given his erratic driving before he pulled over on McIver Street, and her decision to stay in the car with him, given their argument that occurs when they're intoxicated and her decision to stay in the car with him, that she knew or should have known of his intoxication.
After considering the cases submitted by defendant and the arguments by both sides, the trial court denied defendant's motion for a directed verdict at the conclusion of plaintiff's evidence. The trial court explained that,
[w]hile the evidence certainly is that the [p]laintiff herself had consumed such a quantity of alcohol that, by her own admission, *425 she should not drive as they left the restaurant, and as they left [d]efendant's mother's home and though the evidence is that [d]efendant Thomas had consumed more alcohol than she, the evidence at this point is that she saw nothing in his conduct or behavior to cause her to conclude that he shouldn't drive.
I note that there's no evidence concerning the relative size of the [d]efendant as compared to the [p]laintiff. There was some evidence that he was a more experienced drinker than she. I suppose from that it can be inferred that he had a higher tolerance than she.
I also have carefully reviewed at least my notes concerning testimony regarding his driving, and it does appear that, while there is some conflict, I believe that conflict should be resolved in favor of the [p]laintiff at this point, and she did testify on direct before this Court that there was nothing about his driving, speech, or conduct that caused her any concern before the argument.
And while she did demand to get out of the car on McIver Street, it appears at this point that that was because of the argument and not because of concern over his alcohol consumption. So again, ... looking at the evidence in the light most favorable to the [p]laintiff, at this point [d]efendant's motion for directed verdict is denied.
The defense then called N.C. State Trooper Brian Crissman as its only witness. After testifying about his training to identify impairment, Crissman testified that he responded to plaintiff and defendant's accident on 18 January 2012. Crissman stated he spoke with defendant at the scene and later at the hospital. Crissman testified that, during his time with defendant at the hospital approximately two hours after the accident, he observed several signs of alcohol use or intoxication including glassy eyes, slurred speech, and combativeness. Crissman further testified that while conversing with defendant, he got pretty close to defendant's face and could smell the odor of alcohol on defendant's breath. Concerning his interactions with defendant at the accident scene, Crissman testified that he administered two breath tests to defendant using an alco-sensor and both tests were positive for alcohol. Based on his observations at the scene and at the hospital, Crissman opined that defendant was sufficiently impaired by alcohol to impair his ability to drive, adding that "[defendant] was obviously impaired, visibly impaired."
Yet on cross-examination, Crissman acknowledged defendant sustained a head injury in the accident and was unconscious when he arrived to the accident scene. Crissman testified medical personnel removed defendant from the vehicle and transported him to the hospital. As a result, Crissman never saw defendant in a standing position and was unable to perform further field sobriety tests. Crissman indicated he was not a medical professional but had some training on head injuries and acknowledged a head injury could affect or aggravate a person's attitude or combativeness. Crissman further acknowledged defendant had been in treatment for thirty to forty minutes at the hospital before he arrived and he was unsure what medications were administered to defendant. Nevertheless, Crissman testified on re-direct examination that there was no question in his mind that defendant was intoxicated, regardless of any injuries sustained.
At the conclusion of the evidence, the defense renewed its motion for a directed verdict arguing there was now evidence in the record that defendant was impaired. Specifically, the defense argued the evidence of impairment went directly to what plaintiff should have known before she voluntarily rode with defendant and, coupled with the evidence that all alcohol consumed by defendant was consumed in the presence of plaintiff, plaintiff felt the effects of the alcohol she consumed and knew defendant had consumed more alcohol, plaintiff and defendant were arguing over something silly, and defendant was driving erratically which caused plaintiff to make defendant stop the vehicle, left nothing for the jury to decide under the law of contributory negligence and gross contributory negligence in North Carolina.
Upon consideration of the arguments, the trial court allowed defendant's motion for a directed verdict on the basis of gross contributory *426 negligence and ordered defendant to draft the order. The trial court then filed a written order on 25 July 2014. Plaintiff filed notice of appeal on 18 August 2014.
II. Discussion
As a preliminary issue, the defense notes that, contemporaneously with its appellate brief, it filed a motion to dismiss this appeal on the basis that plaintiff's appellate brief was untimely filed. Defendant's motion was denied by order of this Court on 12 March 2015 and we do not address the issue any further.
Now on appeal, plaintiff argues the trial court erred in directing a verdict in favor of defendant. "A motion for a directed verdict by a defendant pursuant to N.C. Gen.Stat. § 1A-1, Rule 50(a) 'tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff.' " Barber v. Presbyterian Hosp., 147 N.C.App. 86, 88, 555 S.E.2d 303, 305 (2001) (quoting Manganello v. Permastone, Inc., 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977) ). "The standard of review of directed verdict is whether the evidence ... is sufficient as a matter of law to be submitted to the jury." Davis v. Dennis Lilly Co., 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing Kelly v. Int'l Harvester Co., 278 N.C. 153, 179 S.E.2d 396 (1971) ).
In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.
Turner v. Duke Univ., 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989). Specifically to the issue in this case,
[t]he general rule is that a directed verdict for a defendant on the ground of contributory negligence may only be granted when the evidence taken in the light most favorable to plaintiff establishes her negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury rather than the trial judge.
Clark v. Bodycombe, 289 N.C. 246, 251, 221 S.E.2d 506, 510 (1976).
Plaintiff contends the trial court erred in entering a directed verdict in favor of defendant on the basis of gross contributory negligence because there was no evidence plaintiff was grossly negligent. In the alternative, plaintiff argues, at the very least, the issue of gross contributory negligence should have been submitted to the jury.
"In this state, a plaintiff's contributory negligence is a bar to recovery from a defendant who commits an act of ordinary negligence." Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 332 N.C. 645, 648, 423 S.E.2d 72, 73-74 (1992). Yet, a plaintiff's contributory negligence does not bar recovery from a defendant who is grossly negligent. See id; see also Pearce v. Barham, 271 N.C. 285, 289, 156 S.E.2d 290, 294 (1967). Only gross contributory negligence by a plaintiff precludes recovery by the plaintiff from a defendant who was grossly negligent. See Harrington v. Collins, 298 N.C. 535, 538, 259 S.E.2d 275, 278 (1979) ("[I]t is the majority rule, and we think the better reasoned rule, that plaintiff's willful or wanton negligence is a defense in an action seeking recovery for injuries caused by defendant's willful or wanton conduct."). Gross negligence is willful and wanton negligence.
An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others. An act is wilful when there exists a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, a duty assumed by contract or imposed by law.
Boyd v. L.G. DeWitt Trucking Co., Inc., 103 N.C.App. 396, 402, 405 S.E.2d 914, 918 (1991) (internal citations and quotation marks omitted). "The concept of willful and wanton negligence encompasses conduct which lies somewhere between ordinary negligence and *427 intentional conduct." (Siders v. Gibbs, 39 N.C.App. 183, 186, 249 S.E.2d 858, 860 (1978) ). "The issue of gross negligence should be submitted to the jury if there is substantial evidence of the defendant's wanton and/or wilful conduct." Cissell v. Glover Landscape Supply, Inc., 126 N.C.App. 667, 670, 486 S.E.2d 472, 474 (1997), rev'd on other grounds, 348 N.C. 67, 497 S.E.2d 283 (1998).
Upon review of the record in this case, we hold the trial court's grant of a directed verdict in favor of defendant on the basis that plaintiff was grossly contributorily negligent was error; at the very least, the issues of defendant's negligence, defendant's gross negligence, and plaintiff's gross contributory negligence should have been decided by the jury.
Defendant cites various cases that stand for the well-established North Carolina rule that,
a passenger is contributorily negligent as a matter of law so to bar recovery in a negligence suit when (1) the driver of the vehicle was under the influence of an intoxicant; (2) the passenger knew or should have known that the driver was under the influence; and (3) the passenger voluntarily rode with the driver even though she knew or should have known that the driver was under the influence.
Kennedy v. Polumbo, 209 N.C.App. 394, 403, 704 S.E.2d 916, 924 (2011) (citing Coleman v. Hines, 133 N.C.App. 147, 149, 515 S.E.2d 57, 59, disc. review denied, 350 N.C. 826, 539 S.E.2d 281 (1999) ); see also Lee v. Kellenberger, 28 N.C.App. 56, 59, 220 S.E.2d 140, 143 (1975). "In determining whether the passenger knew or should have known that the driver was under the influence, our courts apply an 'ordinary prudent man' standard." Id. Although the North Carolina rule is clear, the evidence in this case was not conclusive on the issue of defendant's impairment. Consequently, the evidence could not have been conclusive on the issue of plaintiff's contributory negligence based on whether plaintiff knew or should have known defendant was impaired, much less gross contributory negligence.
While it is clear that defendant consumed alcohol in plaintiff's presence, there is conflicting evidence of whether defendant was impaired and whether the accident was the result of defendant's alleged impairment. In fact, in filing this action against defendant, plaintiff did not include any reference to alcohol consumption in the complaint and did not proceed on a theory that defendant was negligent as a result of driving while impaired. Plaintiff alleged defendant was negligent in that defendant "[f]ailed to keep a proper lookout[,]" "[f]ailed to reduce speed to the extent necessary to avoid a collision[,]" "[f]ailed to keep his vehicle under proper control[,]" and "[d]rove in a careless and reckless manner." The issue of impairment was not raised until defendant asserted contributory negligence and gross contributory negligence as bars to plaintiff's recovery.
Although plaintiff, by her own admission, was impaired by alcohol and the evidence was that defendant consumed one or two more drinks than plaintiff, the evidence also indicated defendant drank several times a week, plaintiff did not drink that much, and defendant was a "far more experienced drinker than [plaintiff] was." Moreover, plaintiff testified defendant was not intoxicated. Plaintiff stated she did not notice anything about defendant's speech that caused alarm, she did not observe that defendant's eyes were glassy, and she did not observe that defendant was unsteady on his feet. Plaintiff testified she did not witness anything that led her to believe defendant was driving in an impaired condition. On the other hand, Trooper Crissman testified he was trained to identify impairment and testified defendant was impaired. Crissman based his opinion on the facts that defendant twice tested positive for alcohol on breath tests administered using an alco-sensor at the accident scene and defendant exhibited several signs of alcohol use or intoxication at the hospital hours after the accident. Those signs included glassy eyes, slurred speech, combativeness, and an odor of alcohol on defendant's breath that Crissman noticed when he got close to defendant's face. Crissman acknowledged, however, that defendant had been knocked unconscious during the accident and had suffered a head injury.
*428 Although Crissman testified he could distinguish between signs of impairment and the injuries, he acknowledged defendant's head injury could affect or aggravate some symptoms. No evidence of defendant's blood alcohol content was introduced.
Additionally, as noted by the trial court when it denied defendant's motion for a directed verdict at the conclusion of plaintiff's evidence, the evidence suggests plaintiff did not have any concern over defendant's driving prior to the argument and, although plaintiff demanded defendant pull over and let her out, plaintiff's demand appeared to be a reaction to the argument. Lastly, the evidence also suggests that plaintiff had no issue with defendant's driving between the time he pulled over to let plaintiff out and when he pulled onto West Forest Oaks near plaintiff's house. Plaintiff testified defendant made a normal turn onto West Forest Oaks and then "just blew up" and "gassed it immediately."
Viewing the above evidence and accompanying inferences in the light most favorable to plaintiff, we hold the evidence was sufficient in this case to have gone to the jury. Instead, the trial court invaded the province of the jury and determined the facts and granted defendant's motion for a directed verdict. This was error.
Moreover, even if the evidence was conclusive on the issue of defendant's impairment and plaintiff was contributorily negligent as a matter of law in that she voluntarily chose to ride with defendant when she knew or should have known defendant was impaired, evidence existed in this case to raise the issue of gross negligence by defendant for jury determination. See Yancey v. Lea, 354 N.C. 48, 53-54, 550 S.E.2d 155, 158 (2001) ("Our case law as developed to this point reflects that the gross negligence issue has been confined to circumstances where at least one of three rather dynamic factors is present: (1) defendant is intoxicated; (2) defendant is driving at excessive speeds; or (3) defendant is engaged in a racing competition.") (internal citations omitted). Thus, ordinary contributory negligence by plaintiff would not preclude her recovery.
We understand that because the trial court found plaintiff grossly contributorily negligent as a matter of law, it would have been futile to allow the jury to determine whether defendant was negligent or grossly negligent because no matter the level of defendant's negligence, the trial court's determination that plaintiff was grossly contributorily negligent would bar her recovery. However, upon review we do not think the evidence supports a determination that plaintiff was grossly contributorily negligent as a matter of law.
In support of his argument that plaintiff was grossly contributorily negligent, defendant relies on Coleman v. Hines, 133 N.C.App. 147, 515 S.E.2d 57 (1999). In Coleman, a wrongful death case arising from a car accident in which the passenger was killed after the passenger and driver had consumed alcohol together at a party, this Court first held the trial court did not err in granting summary judgment as to the issue of negligence of both the driver and the passenger based on the following undisputed facts:
(1) [the driver] was drinking early on the afternoon of the accident when he stopped by to see [the passenger] at her place of employment at Domino's Pizza; (2) according to [the passenger's employer], ... [the passenger] knew [the driver] was drinking when he stopped by Domino's, and [the passenger] also stated that they planned to drink that evening on their way to an engagement party, during the party, and following the party; (3) [the passenger's employer] begged [the passenger] not to ride with [the driver] that night, and repeatedly offered to pick them up at the party and drive them home, no matter how late they stayed at the party; (4) when [the driver] picked up [the passenger] later that evening, they went to a convenience store and purchased a 12-pack of beer, which they drank in each other's presence over the evening; (5) the only alcohol [the driver] drank that evening was consumed in [the passenger's] presence; (6) at the time of the accident, [the driver] blood-alcohol content was at least .184, more than twice the legal limit, according to the treating physician ...; and (7) it was obvious *429 to the officer investigating the accident, ... who arrived about three minutes after the accident, that [the driver] was under the influence of alcohol at the time of the accident.
Id. at 149, 515 S.E.2d at 59. This Court then addressed whether the driver was grossly negligent and held, "to the extent that the evidence establishes willful and wanton negligence on the part of [the driver], it also establishes a similarly high degree of contributory negligence on the part of [the passenger]." Id. at 151, 515 S.E.2d at 60 (internal quotation marks omitted). Thus, this Court held the passenger could not prevail.
Defendant contends the evidence in the present case was similar to the evidence in Coleman in that plaintiff consumed alcohol with defendant, voluntarily rode in the vehicle defendant was driving, defendant's breath tests following the accident were positive for the presence of alcohol, and Crissman stated he observed signs of intoxication. Thus, defendant argues for the same result-that no matter the level of defendant's negligence, plaintiff's negligence rose to the same level.
In deciding Coleman, the court made clear that its decision was based on the "facts of [the] case[.]" Id. at 152, 515 S.E.2d at 60. We find this case distinguishable. Specifically, we note that the undisputed facts in Coleman revealed that the passenger was aware that the defendant had been drinking all day, the passenger was offered and refused an alternative ride from her concerned employer who warned her not to ride with the driver, and the driver's blood alcohol content was at least .184, more than twice the legal limit. This evidence from Coleman showed the driver was appreciably impaired and there was concern expressed to the passenger about riding with the driver. In the present case, there was no such evidence. Even if defendant was impaired and plaintiff knew or should have known defendant was impaired, the evidence in this case is not sufficient to determine as a matter of law that plaintiff's contributory negligence rose to the level of gross contributory negligence. Moreover, the evidence suggests plaintiff had no concern about defendant's driving until their argument, or following the argument until after defendant turned onto West Forest Oaks when defendant "just blew up" and rapidly accelerated. We think this evidence, separate and apart from any evidence of impairment, was sufficient to raise the issue of defendant's gross negligence in that it manifests a reckless indifference to the rights of plaintiff.
In addition to challenging the trial court's grant of a directed verdict in favor of defendant, plaintiff contends the trial court erred in failing to present the issues of defendant's gross negligence and last clear chance to the jury.[2] Concerning defendant's gross negligence, the basis of the trial court's directed verdict foreclosed the need to consider the issue. Concerning last clear chance, although plaintiff filed a reply asserting defendant had the last clear chance to avoid the accident, plaintiff did not argue the issue below and has waived the issue on appeal.
Having already concluded the trial court erred in granting the directed verdict in favor of defendant, any further analysis on these issues would be merely advisory, and we do not offer advisory opinions. See Poore v. Poore, 201 N.C. 791, 792, 161 S.E. 532, 533 (1931) ("It is no part of the function of the courts ... to give advisory opinions...."). Thus, we do not address these issues further.
III. Conclusion
As discussed, it appears the trial court invaded the province of the jury and decided the material facts of this case. Accordingly, we hold the trial court erred in entering a directed verdict on the basis that plaintiff was grossly contributorily negligent. Plaintiff is entitled to a new trial.
NEW TRIAL.
*430 Judge STEELMAN, concurs. Concurred prior to 30 June 2015.
Judge STEPHENS concurs.

Progressive, who was defendant's liability insurer at the time of the accident, was allowed to intervene and represent the interests of defendant, who was unable to cooperate in this proceeding due to his incarceration out of state.

In response to plaintiff's second and third issues on appeal, defendant argues the issues were not preserved for review citing N.C. R.App. P. 10(a) for the proposition that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal[.]" Defendant, however, carelessly cites an old version of Rule 10. Following amendments to the appellate rules in 2009, review on appeal is no longer limited to assignments of error noted in the record.