IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-809

Filed 2 July 2025

Mecklenburg County, No. 20CVS003169-590

LANCE FENDERSON, individually, CHRISTINE FENDERSON, individually, and
TROY FENDERSON, individually, Plaintiffs,

v.

DAVIDSON DAY SCHOOL, KYLE K. McLAUGHLIN, ROB JOHNSON,
ASHEVILLE SCHOOL, INCORPORATED, and OLIVER A. FERENBACH,
Defendants

Appeal by Plaintiffs from orders entered 14 July 2021 and 4 May 2022 by Judge

Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of

Appeals 3 April 2025 in session at Elon University School of Law in the City of

Greensboro pursuant to N.C. Gen. Stat. § 7A-19(a)(2023).

*Allen, Chesson & Grimes, PLLC, by Anna C. Majestro, David N. Allen and Benjamin S. Chesson, for the Plaintiffs-Appellants.*

*Waldrep Wall Babcock & Bailey PLLC, by Joseph T. Carruthers and J. Dennis Bailey, for the Defendants-Appellees*

*Ball, Barden & Cury, P.A., by Ervin L. Ball, Jr., for the Defendant-Appellee Oliver A. Ferenbach.*

WOOD, Judge.

Plaintiffs appeal from a 14 July 2021 order partially granting Defendant Oliver

Ferenbach's Motion for Judgment on the Pleadings and a 4 May 2022 order granting

Summary Judgment in favor of Defendants Asheville School, Inc. and Ferenbach.[1]

## I. Factual and Procedural History

On 10 May 2019, Davidson Day School ("Davidson") and Asheville School ("Asheville") engaged in a high school lacrosse game. Lance Fenderson ("Plaintiff Lance") was a junior on Davidson's team, while Oliver Ferenbach ("Defendant Ferenbach") was a senior on Asheville's team. Both boys had played lacrosse for several years, including for multiple years on their respective school teams. During the game, both boys wore standard lacrosse gear including helmets, face masks, and pads.

According to a post-game report by the officiating crew, it was a game with "routine" fouls and no significant incidents prior to the fourth quarter. During the second minute of the fourth quarter, Defendant Ferenbach scooped up the ball near the right sideline, approximately halfway down Davidson's defensive field and charged through the open field towards Davidson's right goal post. Plaintiff Lance, in a defensive maneuver, ran back and to the right to place himself between Defendant Ferenbach and the goal. Prior to contact, Plaintiff Lance dropped both his body and head, leaning towards Defendant Ferenbach. Defendant Ferenbach also lowered his left shoulder and head, while shifting his stick inside away from Plaintiff

---

[1] All claims and counterclaims between Defendants Davidson Day School, Kyle K. McLaughlin and Ron Johnson ("the DDS Defendants") and the Plaintiffs were dismissed with prejudice 29 December 2023.

Lance, and continued through the contact while taking a shot to score a goal. Plaintiff Lance was knocked to the ground in the collision and did not attempt to rise. A penalty flag was thrown, and play was suspended while Plaintiff Lance received medical care.

While play was suspended the officials discussed the penalty and the appropriate response to the situation. The officials gave Defendant Ferenbach a penalty for a personal foul, a head-to-head hit, and ejected him from the game. Play never resumed, however, as the coaches jointly decided to end the game.

On 13 February 2020, Lance Fenderson, Christine Fenderson, and Troy Fenderson (jointly "the Plaintiffs") filed a complaint asserting claims against Defendant Ferenbach for injuring Plaintiff Lance, as well as claims against Asheville for failure to properly train Defendant Ferenbach and for vicarious liability for Defendant Ferenbach's actions. Plaintiffs also sued Davidson Day School and employees Kyle K. McLaughlin and Ron Johnson ("the DDS Defendants") for failure to properly train Plaintiff Lance and for not providing him with proper safety equipment. Christine and Troy Fenderson also asserted claims for negligent infliction of emotional distress ("NIED").

On 4 June 2020, Defendants filed their response including affirmative defenses of waiver and contributory negligence, as well as a motion to dismiss.

On 7 April 2021, Defendant Ferenbach moved for judgment on the pleadings. The trial court heard the motion on 15 June 2021. On 6 July 2021, the trial court

partially granted Defendant Ferenbach's motion, dismissing Plaintiff's negligence and NIED claims, reasoning a heightened standard of care applied to the claims against Defendant Ferenbach. The trial court did not dismiss Plaintiff Lance's claim against Defendant Ferenbach for willful and wanton conduct based on his actions during the collision with Plaintiff Lance.

On 8 March 2022, Asheville filed a motion for summary judgment, and Defendant Ferenbach filed a motion for summary judgment on 10 March 2022. Plaintiffs opposed the motions arguing, irrespective of the standard of care, Plaintiff Lance's claims against Defendant Ferenbach should proceed because evidence exists tending to show Defendant Ferenbach had acted intentionally to injure Plaintiff Lance. After a full briefing and a hearing on 7 April 2022, the trial court entered an order on 4 May 2022 granting both summary judgment motions. While the trial court did "not conclude [Plaintiff Lance] caused or legally contributed to his own injuries" it did tax Defendants' costs to Plaintiffs. The case proceeded against the DDS Defendants.

On 26 January 2023, the trial court dismissed Plaintiff's ordinary negligence claims against the DDS Defendants based on the pre-injury release Plaintiffs Christine and Troy signed. Plaintiffs and DDS Defendants resolved their remaining claims, and on 29 December 2023 at the joint request of the parties, the trial court entered a final consent order of dismissal for all claims between Plaintiffs and DDS Defendants.

On 26 January 2024, Plaintiffs filed and served a Notice of Appeal of the 14 July 2021 Motion for Judgment on the Pleadings, as well as the 4 May 2022 Order for Summary Judgment.

## II.    Analysis

Plaintiffs raise three issues on appeal: (1) the trial court erred in departing from the ordinary standard of care for Plaintiffs' negligence-based claims against Defendant Ferenbach; (2) the trial court erred in finding genuine issue of material fact for the jury at summary judgment on whether Defendant Ferenbach violated whatever standard he owed to Plaintiff Lance in light of evidence Defendant Ferenbach had acted intentionally or recklessly to injure Plaintiff Lance; and, (3) the trial court erred in dismissing claims against Asheville notwithstanding the outcome of Plaintiff Lance's claim against Defendant Ferenbach.

Defendants contend the trial court did not err in granting summary judgment to both Defendant Ferenbach and Asheville and raise two additional issues on appeal: (1) the trial court should have granted Defendant Ferenbach's Motion for Judgment on the Pleadings in its entirety; and, (2) the trial court should have ruled that Plaintiff Lance's actions causing or contributing to his own injuries were another reason to grant summary judgment.

### A. Motion for Summary Judgment

#### 1. Standard of Review

An order allowing summary judgment is reviewed *de novo.* *James H.Q. Davis Tr. v. JHD Props, LLC,* 387 N.C. 19, 23, 910 S.E.2d 652, 657 (2025). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Id.* (quoting N.C.G.S. § 1A-1, Rule 56(c) (2023)). "A genuine issue is an issue that is 'supported by substantial evidence, and an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action.'" *Id.* Initially, the party seeking summary judgment bears the burden of demonstrating the absence of a "genuine issue of material fact." However, "[o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations. . . ." *Id.* " Its response must set forth specific facts showing that there is a genuine issue for trial." *Id.* (cleaned up).

## 2. Presence of a Jury Issue

Plaintiffs contend the trial court erred by finding no genuine issue of material fact exists at summary judgment. Specifically, Plaintiffs contend whether Defendant Ferenbach violated whatever standard he owed to Plaintiff Lance, in light of evidence tending to show Defendant Ferenbach had acted willfully or wantonly to injure, Plaintiff Lance was a material fact in dispute. We disagree. The record evidence

simply does not support findings or conclusions from which any type of tort liability could be found.

While this Court has previously warned summary judgment "is rarely an appropriate remedy in cases of negligence or contributory negligence, we have clarified summary judgment is appropriate in a cause of action for negligence where the plaintiff's forecast of evidence fails to show negligence on the defendant's part . . . ." *Proffitt v. Gosnell*, 257 N.C. App. 148, 151, 809 S.E.2d 200, 204 (2017) (cleaned up).

In any ordinary negligence action, "plaintiffs must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." *Elm St. Gallery, Inc. v. Williams*, 191 N.C. App. 760, 767, 663 S.E.2d 874, 878 (2008) (cleaned up). Additionally, this Court has determined that willful and wanton negligence is gross negligence.

> An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others. An act is willful when there exists a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, a duty assumed by contract or imposed by law.

*McCauley v. Thomas ex rel. Progressive Universal Ins. Co.*, 242 N.C. App. 82, 89–90, 774 S.E.2d 421, 426 (2015) (cleaned up).

Both parties agree, and this Court concurs, neither our General Assembly nor our case law has established a separate duty or standard of care for contact sports in

North Carolina. While future cases may require consideration of whether such a duty should apply, this case does not warrant such action. Based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, we conclude no facts support negligence under the reasonable and prudent person standard. "Actionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions." *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002).

In the current case, Defendant Ferenbach and Plaintiff Lance were opposing high school lacrosse players engaged in a competitive post-season playoff game. The play at issue lasted five seconds from the time Defendant Ferenbach picked up the ball until he took his shot on goal after colliding with Plaintiff Lance.

Plaintiffs' lacrosse experts testified boys high school lacrosse is a contact sport in which high-impact player collisions are an inherent part of the game. In addition, the high school lacrosse rules entered into evidence clearly state, "Officials shall . . . remain aware of the inherent risk of injury that competition poses to student-athletes."

A video of the game was entered into evidence as Exhibit 1 and both parties testified to the accuracy of the video. The video clearly depicts Defendant Ferenbach acquiring the ball at the right sideline in the fourth quarter with 10:03 remaining on the game clock. Defendant Ferenbach then runs in a straight line from the right

sideline to the right goal post without slowing or changing direction. Plaintiff Lance advances and steps into Defendant Ferenbach's line to the goal at 10:00, leaning down, head down, and bracing for impact. Defendant Ferenbach continues forward dropping his head and shoulder maneuvering through Plaintiff Lance and taking a shot on goal at 9:58. No evidence tends to show Defendant Ferenbach went out of his way to hit Plaintiff Lance, and the clear evidence indicates he had two seconds or less to react or respond to Plaintiff Lance stepping into his line to the goal.

Plaintiffs' medical expert testified but for Plaintiff Lance's choice to lower his head, he would not have sustained the blow to the top of his head which caused the neck fractures. Additionally, one of Plaintiff's lacrosse experts testified "it was Lance's movements that allowed for there to be a collision" and both boys had a responsibility for keeping their bodies under control.

Coaches for both teams and all three officials involved in the game gave depositions. There was consistent agreement among the coaches and officials the game was not "chippy," it had been a normal game up until the collision at issue without excessive fouls or aggressive play. In fact, the head official stated that by half time the game was no longer close in score and the teams were "not playing with any high level of physicality."

When asked about the collision at issue, all three officials agreed Defendant Ferenbach had been flagged for initiating a head-to-head collision. However, the "bull dodge" maneuver he was attempting to utilize was a permitted body check by an

offensive player attacking the goal as long as the hit occurred in a legal area from the defender's shoulders to his waist. The only reason this particular play became illegal was because the hit ended up being a blow to the head, which is never allowed. None of the officials believed Defendant Ferenbach was targeting Plaintiff Lance and during testimony the head official explicitly refused to state the player's head-to-head contact was intentional.

The evidence tended to show game officials flagged Defendant Ferenbach because the legal bull dodge offensive maneuver resulted in an unintentional illegal hit. Further, the decision to eject Defendant Ferenbach from the game stemmed from game officials reasoning if Plaintiff Lance was not going to be able to return to the game, then Defendant Ferenbach should not return either. After reviewing the game footage during their depositions, two of the three officials, including the head official, indicated Plaintiff Lance's decision to engage in a defensive block with his head down and with the crown of the helmet initiating could have been a defensive personal foul, but it had not been noticed during active play because of the officials' angles of view of the collision.

Based on this evidence, nothing supports Plaintiffs' contention Defendant Ferenbach failed to display the degree of care a reasonable and prudent high school lacrosse player would exercise during a five second play in a high-speed game in which high-impact body to body collisions are not only allowed, but which are an inherent part of the game.

Although North Carolina case law concerning duty to and liability of players in contact sports is limited, our Courts have considered duties owed to spectators. There is a long-standing "baseball rule" in North Carolina jurisprudence. Our Supreme Court has stated, "where a spectator, with ordinary knowledge of the game of baseball . . . proceeds to sit in an unscreened stand . . . he thereby *accepts the common hazards incident to the game . . . .*" *Erickson v. Lexington Baseball Club, Inc.*, 233 N.C. 627, 629, 65 S.E.2d 140, 141 (1951) (cleaned up) (emphasis added). This Court addressed a similar concept analogizing the soccer game at issue to previous baseball cases,

> In baseball, . . . the patron participates in the sport as a spectator and in so doing *subjects himself to certain risks necessarily and usually incident to and inherent in the game*; risks that are obvious and should be observed in the exercise of reasonable care. This does not mean that he assumes the risk of being injured by the proprietor's negligence but that by voluntarily entering into the sport as a spectator *he knowingly accepts the reasonable risks and hazards inherent in and incident to the game.*

*Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 285, 669 S.E.2d 777, 780 (2008) (cleaned up) (emphasis added). This Court most recently reaffirmed the "baseball rule" in 2020. *Mills for DeBlasio v. Durham Bulls Baseball Club, Inc.*, 275 N.C. App. 618, 625, 854 S.E.2d 126, 132 (2020).

Not unlike baseballs flying at high rates of speed into the stands, high speed, high-impact body-to-body collisions are an inherent part of lacrosse and incident to the game. Both Plaintiff Lance and Defendant Ferenbach were seasoned lacrosse

players with more than "ordinary knowledge" of the game. Each player voluntarily chose to participate and during the course of play chose to embark on the course of action precipitating the collision. While we empathize with Plaintiffs amid the life-changing circumstances following the collision, no evidence shows, and we cannot conclude Defendant Ferenbach acted with negligence or willful or wanton behavior. Therefore, we affirm the trial court's granting of summary judgment.

### 3. Dismissing Claims Against Asheville

Next, Plaintiff argues the trial court erred in dismissing Plaintiffs' negligence and negligent infliction of emotional distress claims against Asheville for failure to properly train Defendant Ferenbach to comply with the rules regardless of the outcome of Plaintiff Lance's claim against Defendant Ferenbach.

North Carolina does not recognize a tort claim for the failure of a school or coach to train a minor to comply with the rules in a sporting event, and a thorough review of other states' legislation and case law reveals scant additional support for this assertion. Plaintiffs assert the harm was "a direct and proximate result" of Asheville's failure to train Defendant Ferenbach thereby increasing the risk of the sport. In support of their proposition, Plaintiffs cite to a California Supreme Court case which states "the host school and its agents owe a duty to home and visiting players alike to, at minimum, *not increase the risks inherent* in the sport." *Avila v. Citrus Cmty. Coll. Dist.*, 38 Cal. 4th 148, 162, 131 P.3d 383, 392 (2006) (emphasis added). However, *Avila* addresses a college baseball player being hit by a pitch in a

preseason game. The case does not address failure to coach a minor and the court ultimately determined that allowing or coaching a pitcher to hit a batter was a "fundamental part and inherent risk of the sport of baseball." *Avila v. Citrus Community College Dist.*, 38 Cal. 4th 148, 165, 131 P.3d 383, 394 (2006). We find *Avila* easily distinguishable and are unpersuaded by Plaintiffs' arguments otherwise.

Neither North Carolina statutes nor case law establishes a cause of action for failure of a school or coach to train a minor in the rules of a sporting event. "This Court is an error-correcting court, not a law-making court. We are not in the position to expand the law. Rather, such considerations must be presented to our Supreme Court or our Legislature . . . ." *Williams v. N.C. Dep't of Justice, Criminal Standards Div.*, 273 N.C. App. 209, 217, 848 S.E.2d 231, 238 (2020) (cleaned up). Because Plaintiffs fail to state a claim for which relief may be granted under current North Carolina law, we affirm the trial court's dismissal of the claims against Asheville.

### 4. Contributory Negligence

Defendants argue the trial court should have ruled that Plaintiff Lance's actions causing or contributing to his own injuries were an additional factor supporting summary judgment.

> Contributory negligence is negligence on the part of the plaintiff which joins . . . with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains. Contributory negligence is a bar to recovery if a plaintiff has contributed to their injury in any way. In order to prove contributory negligence on the part of a plaintiff, the defendant must

> demonstrate: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury.

*Archie v. Durham Pub. Schs. Bd. of Educ.*, 283 N.C. App. 472, 474-75, 874 S.E.2d 616, 620 (2022) (cleaned up).

As discussed above, no facts support a finding of negligence, therefore the issue of contributory negligence is moot. The record tends to show both players displayed the degree of care a reasonable and prudent high school lacrosse player would exercise under the facts of this case. We affirm the trial court's order declining to find Plaintiff Lance contributorily negligent.

**B. Judgment on the Pleadings**

Both Plaintiffs and Defendants raised issues with the trial court's Judgment on the Pleadings preceding summary judgment. Plaintiffs claim the trial court erred by utilizing a higher standard to dismiss their negligence and NIED claims while Defendants contend the trial court should have granted Defendant Ferenbach's motion for judgment on the pleadings in its entirety.

As addressed above, we concluded no facts support negligence under the reasonable and prudent person standard. This is true even upon review of only the pleadings, as required in considering a Rule 12(c) motion for judgment on the pleadings. *Davis v. Durham Mental Health/Dev. Disabilities Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004). Plaintiffs' pleading concedes that "[l]across, by its nature, is a sport that is likely to involve physical contact between

players and it is readily foreseeable that such physical contact, unless protected against, can cause injury." Although Plaintiffs contend Defendant Ferenbach broke a rule of the game and caused an injury, Plaintiffs acknowledge Plaintiff Lance failed to keep his arms out and head up as players are taught, and instead, lowered his head and braced for the collision when he moved into Defendant Ferenbach's path to the goal. In their answer Defendants contend the Rules speak for themselves. The Rules state, in pertinent part, "Officials shall . . . remain aware of the inherent risk of injury that competition poses to student-athletes." Whether or not a rule was broken during the play at issue, no North Carolina court has ever held breaking a rule of a high-school sporting event equates to negligence *per se* as Plaintiffs contend, nor have the courts ever found that a player who is involved in active play in a high-speed contact sport violated the reasonable duty of care in attempting an offensive play on goal. There cannot be a duty to avoid a collision in a high-speed, full contact-sport when players have mere milliseconds to respond to their opponents' movements and the rules of the game state there is an inherent risk of injury. Such a requirement would lead to absurd results and change the play of all contact sports.

Presuming the trial court erred in holding a higher standard of negligence applied when dismissing Plaintiff's negligence and NIED claims, "a trial court's ruling must be upheld if it is correct upon any theory of law, and thus it should not be set aside merely because the court gives a wrong or insufficient reason for it." *Templeton v. Town of Boone*, 208 N.C. App. 50, 54, 701 S.E.2d 709, 712 (2010) (cleaned

up). Therefore, as no facts support negligence or NIED claims even on the pleadings, the trial court was correct in dismissing the claims. We affirm the order.

Finally, we need not consider Defendant's final argument as this matter is now moot. "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *TAC Stafford, LLC v. Town of Mooresville*, 282 N.C. App. 686, 699, 872 S.E.2d 95, 104 (2022) (citation omitted), disc. review denied, 282 N.C. 686, 880 S.E.2d 695 (2022). Additionally, our holding affirming the trial court's granting of summary judgment provides all necessary relief for Defendant. Consequently, any further determination relative to concerns with the judgment on the pleadings "cannot have any practical effect on the existing controversy." *Id.* at 699, 872 S.E.2d at 104-05.

Accordingly, we affirm the trial court's order dismissing Plaintiffs' negligence and NIED claims and we do not reach Defendant's assertions concerning the judgment on the pleadings, as they are rendered moot by our disposition of Plaintiffs' appeal of the Summary Judgment order.

### III.    Conclusion

For the foregoing reasons, we conclude no facts exist *sub judice* to support a finding of any tort claim, including negligence, NIED or willful and wanton behavior. We affirm the trial court's order for judgment on the pleadings dismissing the issues of negligence and NIED and we affirm the trial court's order for summary judgment

on the issues of  willful and wanton negligence and contributory negligence.  Because North Carolina does not recognize a tort for a coach's failure to train a minor in the rules in a sport, we affirm the trial court's dismissal of that claim at summary judgment.  Finally, all other issues asserted as to the judgment on the pleadings are moot.  The trial court's orders for judgment on the pleadings and summary judgment are affirmed.

AFFIRMED.

Judge TYSON concurring.

Judge FREEMAN concurring in part, dissenting in part by separate opinion.

FREEMAN, Judge, concurring in part and dissenting in part.

I concur with the majority's affirmance of the trial court's dismissal of plaintiffs' claims against defendant Asheville School for the reasoning provided therein. However, because the trial court erred in applying unknown and legally baseless higher standards of care to plaintiffs' claims against defendant Oliver, this Court should vacate the trial court's order granting Oliver's motion for judgment on the pleadings, vacate in part the trial court's order granting summary judgment, and remand for application of the correct legal standards. Instead of exercising judicial restraint and following this course of action, the majority—with a procedurally confused and legally flawed opinion—denies plaintiffs their day in court. I respectfully dissent.

## I. Background

At its base, this case involves simple, though tragic, facts. As alleged in plaintiffs' complaint, plaintiff Lance and defendant Oliver were opposing high school lacrosse players participating in a match hosted at Asheville School's campus. Oliver, who was an Asheville School student, gained possession of the ball late in the game and ran towards the opposing goal. Lance, who was a Davidson Day School ("DDS") student, "attempted to place himself in a defensive position to block [Oliver]'s path to goal" and "lowered his head in anticipation of the collision" with Oliver. Oliver "lowered his shoulder, accelerated, and plowed through Lance, hitting Lance in his improperly lowered head with his shoulder, driving Lance's head into the base of his

neck, breaking Lance's neck at vertebrae's C5, C6 and C7." As a result of this collision, "Lance is permanently paralyzed from the chest down and will spend the rest of his life confined to a wheelchair, requiring total care and support."

Lance and his parents sued Oliver, DDS, a DDS coach, a DDS athletic director, Asheville School, and an Asheville School trainer. As is relevant here, plaintiffs asserted claims of negligence, negligent infliction of emotional distress ("NIED"), and vicarious liability against Asheville School and claims of negligence, NIED, and willful and wanton conduct against Oliver.[2] Oliver moved for judgment on the pleadings and the trial court granted this motion as to plaintiffs' negligence and NIED claims but denied it as to plaintiffs' willful and wanton claim. Later, both Oliver and Asheville School moved for summary judgment and the trial court granted these motions as to plaintiffs' willful and wanton claim against Oliver and all of plaintiffs' claims against Asheville School. Plaintiffs appealed, arguing the trial court erred in: (1) departing from the ordinary standard of care when determining their negligence-based claims against Oliver; (2) concluding no jury issue existed regarding their willful and wanton claim against Oliver; and (3) dismissing their claims against Asheville School.

In addressing plaintiffs' appeal, the majority confuses these issues. Though it acknowledges the trial court's legal error in failing to apply the appropriate standard

---

[2] Plaintiffs' claims against the DDS defendants and the Asheville School trainer were either dismissed by consent or voluntarily dismissed.

of care to plaintiffs' claims against Oliver, it places itself in the jury box and affirms the trial court's summary judgment order—which did not address plaintiffs' negligence or NIED claims—because "no facts support negligence under the reasonable and prudent person standard." The majority then employs this flawed analysis of the summary judgment order to conclude it need not reach the trial court's order granting judgment on the pleadings, even though that order: (1) was entered prior to the summary judgment order, (2) is subject to a meaningfully different legal standard, and (3) actually addressed plaintiffs' ordinary negligence-based claims.

Regardless of a favorable or unfavorable outcome, litigants in this State deserve effective appellate review of their matters in this Court. Such review necessarily requires delineation of the separate claims and trial court orders on appeal.

## II.    Judgment on the Pleadings

"We review a trial court's ruling granting or denying a motion for judgment on the pleadings using a de novo standard of review." *Anderson Creek Partners, L.P. v. Cnty. of Harnett*, 382 N.C. 1, 12 (2022).

> The purpose of a motion for judgment on the pleadings . . . is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit, with the entry of judgment on the pleadings being appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain. In deciding whether to grant or deny a motion for judgment on the pleadings, the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving

3

party, with all well pleaded factual allegations in the nonmoving party's pleadings being taken as true and all contravening assertions in the movant's pleadings being taken as false. A party seeking judgment on the pleadings must show that the complaint fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar thereto.

*Id.* at 11–12 (cleaned up).

"The common law claim of negligence has three elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 450 (2022). To adequately state "a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Newman v. Stepp*, 376 N.C. 300, 304 (2020) (cleaned up).

The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence. The duty of ordinary care is no more than a duty to act reasonably. The duty does not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care. Thus, it is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that the consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury.

*Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226 (2010) (cleaned up).

Here, the trial court determined that a higher standard of care above and beyond ordinary care applied to plaintiffs' negligence and NIED claims but failed to articulate what standard, if any, guided its decision to grant Oliver's motion for judgment on the pleadings for these claims. As judgment on the pleadings is appropriate when "only questions of law remain," *id.* at 12, and as the majority and I agree that the trial court erred as a matter of law by imposing a higher, unknown standard, this Court should restrain itself to simply vacating the trial court's erroneous order and remanding for application of the correct standard.

However, if I, like the majority, were to go further, I would conclude that the factual allegations in plaintiffs' complaint are sufficient to withstand judgment on the pleadings. When viewed in the light most favorable to plaintiffs, *see Anderson Creek Partners*, 382 N.C. at 12, plaintiffs' complaint adequately alleged: (1) Oliver owed a duty to exercise reasonable care under those circumstances; (2) Oliver breached that duty by not avoiding the collision and instead lowering his shoulder to make contact with Lance's head; and (3) Oliver's breach of duty was the actual and proximate cause of Lance's injuries, as the contact broke Lance's neck and caused him to be paralyzed from the chest down. These factual allegations state a cause of action for negligence sufficient to survive Oliver's motion for judgment on the pleadings.

In the same vein, plaintiffs' complaint adequately stated a claim for NIED. Viewed in the light most favorable to plaintiffs, the complaint alleged: (1) Oliver

engaged in negligent conduct; (2) it was reasonably foreseeable that negligently injuring Lance while Lance's parents were watching would cause them severe emotional distress; and (3) Oliver's conduct actually caused them severe emotional distress. Accordingly, plaintiffs' claim for NIED alleged facts sufficient to survive a motion for judgment on the pleadings.

This is not to say that Oliver was in fact negligent or negligently inflicted severe emotional distress. That is not the question to resolve when reviewing the granting of a judgment on the pleadings. Rather, we must determine if the facts alleged, taken in the light most favorable to the plaintiff, fail to state a cause of action. Because plaintiffs' complaint alleged facts sufficient to state causes of action for negligence and NIED, I would reverse the trial court's order granting in part Oliver's motion for judgment on the pleadings.

### III.    Summary Judgment

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524 (2007). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Id.* at 523–24 (quoting N.C. R. Civ. P. 56(c)). "The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *Id.* at 524. "Moreover, 'all inferences of fact . . . must be drawn against the movant and in favor of the party

opposing the motion.'" *Id.* (quoting *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)).

"Gross negligence is willful and wanton negligence." *McCauley v. Thomas ex rel. Progressive Universal Ins. Co.*, 242 N.C. App. 82, 89 (2015). "The concept of willful and wanton negligence encompasses conduct which lies somewhere between ordinary negligence and intentional conduct." *Id.* (cleaned up). Our Supreme Court "has sometimes found it difficult to distinguish between negligence and gross negligence in practice." *Cullen v. Logan Devs., Inc.*, 386 N.C. 373, 382 (2024) (citation omitted). "Whereas ordinary negligence involves inadvertence or carelessness, we have used the term gross negligence in the sense of wanton conduct." *Id.* (cleaned up). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (quoting *Foster v. Hyman*, 197 N.C. 189, 191 (1929)).

Here, the trial court again failed to articulate what standard of care it employed in determining that Oliver was entitled to summary judgment on plaintiffs' willful and wanton claim. Based upon the trial court's statements in the transcript and its erroneous imposition of some higher standard for plaintiffs' negligence claims against Oliver, I would vacate in part the trial court's order granting summary judgment and remand for application of the correct standard.

## IV. Judgment on the Pleadings v. Summary Judgment

As illustrated above, the legal standards and tests governing resolution of motions for judgment on the pleadings and motions for summary judgment differ

significantly. When addressing a motion for summary judgment, a trial court may refer to evidence and information outside the pleadings, such as "depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits[.]" N.C. R. Civ. P. 56(c). In contrast, when addressing a motion for judgment on the pleadings, "[t]he trial court may consider only the pleadings and exhibits which are attached and incorporated into the pleadings[.]" *Davis v. Durham Mental Health/Dev. Disabilities Area Auth.*, 165 N.C. App. 100, 103 (2004).

Rather than review these two orders on appeal under the appropriate respective standards, the majority improperly conflates them. On one hand, plaintiffs' negligence and NIED claims against Oliver were dismissed by the trial court's order partially granting Oliver's judgment on the pleadings. Therefore, in reviewing this order this Court may "consider *only* the pleadings and exhibits which are attached and incorporated into the pleadings[.]" *Id.* (emphasis added). On the other hand, plaintiffs' willful and wanton conduct, or gross negligence, claim against Oliver was dismissed by the trial court's order granting Oliver's motion for summary judgment. Therefore, this Court may look outside the pleadings to depositions, answers to interrogatories, etc., in reviewing this order.

Instead of properly reviewing the *pleadings* to determine whether the trial court erred in dismissing plaintiffs' negligence and NIED claims, the majority examines evidence outside the pleadings because it purports to review the trial court's summary judgment order in addressing these claims. The majority's logic

8

appears to be that because the evidence outside the pleadings fails to establish negligence, summary judgment was proper for plaintiffs' willful and wanton claim. And because summary judgment was proper for plaintiffs' willful and wanton claim, judgment on the pleadings was therefore proper for plaintiffs' negligence and NIED claims. This reasoning is erroneous for at least two reasons.

First, as gross negligence "encompasses conduct which lies somewhere between ordinary negligence and intentional conduct," *McCauley*, 242 N.C. App. at 89, even *if* plaintiffs' gross negligence claim was properly dismissed at summary judgment, that would have no bearing on plaintiffs' negligence and NIED claims. Negligence is necessary to establish gross negligence. Gross negligence is not necessary to establish negligence.

Second, it is wholly inappropriate for the majority to reference evidence outside the pleadings in determining whether plaintiffs established a claim for negligence. Because plaintiffs' negligence and NIED claims against Oliver were dismissed by the trial court's order partially granting judgment on the pleadings, our review must be limited to that which was properly before the trial court: "the pleadings and exhibits which are attached and incorporated into the pleadings[.]" *Davis*, 165 N.C. App. at 103.

The majority's characterization of the judgment on the pleadings issues as "moot" is unconvincing to say the least. The judgment on the pleadings issues—i.e., whether plaintiffs adequately pled claims for negligence and NIED against Oliver—

9

are only "moot" because the majority addressed them via review of a summary judgment order that did not address those claims.

## V.    Conclusion

Because the majority opinion fails to adequately address the issues on appeal, and because the trial court undoubtedly erred in applying a heightened standard of care, I dissent and would at minimum vacate and remand the trial court's orders granting judgment on the pleadings and summary judgment.